Mitchell et al v. Rogers, Ad., et al.

MITCHELL ET AL v. ROGERS, AD., ET AL.

1. WILLS: *Probate of: Jurisdiction.*

The 12th clause of Section 5794 of Gantt's Digest did not authorize a Court of Equity to review the decision of the Probate Court upon a probate of a will where there was no appeal to the Circuit Court, nor of the original decision of the Circuit Court while it had original probate jurisdiction under the act of 1873; nor does it now authorize such review of the decision of the Probate Court rendered since the restoration of that Court by the Constitution of 1874. And a Court of Equity has no such jurisdiction.

APPEAL from *Johnson* Circuit Court in Chancery.

Hon. W. D. JACOWAY, Judge of the Circuit Court.

*Idus L. Fielder*, for Appellants.

·Argues upon the merits. '

*W. W.* Mansfield, for Appellees.

This bill was filed under Sec. 5794, Gantt's Dig. That section is a literal copy of *Civil Code, par.,* 12, *sec.* 513, *Ch.* 9, and is taken bodily from *par.* 12, *sec.* 519, *Ch.* 10, Myers' *Kentucky Code, see p.,* 145-9. When this Code was adopted Probate Courts had not been abolished, and they had original jurisdiction of probate of wills, &c., with provision for appeal to the Circuit Court, and thence to the Supreme Court.

The reprint of the Ky. Code is confessed to be typographically incorrect (see preface to Code) and in the 10th paragraph, sec. 513, ch. 9, there is a manifest error. The corresponding paragraph in Myers' reads, "When the proceeding is taken to the *Circuit* Court," &c.. In the Ark. edition the word "Circuit" is omitted, and the omission is continued in Gantt's Dig., where sec. 5792 is practically without meaning, unless the omitted word be supplied. The word "Circuit" in the second line of sec.

5794, is not used because of the act of 1873, abolishing Probate Courts, and vesting their jurisdiction in the Circuit Court, but because both before and after that act the sense and obvious meaning of all the provisions of the Code, touching probate of wills, required its use in the connection in which it is now found, in the section referred to. If any change was made necessary by the act of 1873, then the word "Supreme" should have been substituted for "Circuit." Compare *sec.* 5779 with *Ky. Code, par.* 2, *sec.* 519.

The Const. 1874 re-established Courts of Probate, &c., and gave Circuit Courts appellate jurisdiction. It follows that all the Code provisions in *Ch.* 135 *Gantt's Dig.* are to be read *now*, as they ought to have been printed, if Probate Courts had never been abolished. *Sec's.* 14 *and* 34, *Art.* 7, *Const.* 1874 and *sec's.* 1 *and* 23 *of Schedule.* Treating them as thus amended, the bill cannot be maintained under Sec. 5794, until a retrial has been had in the *Circuit* Court. The Chancery Court had no jurisdiction.

Notice is not necessary. *Sec.* 5793, *Gantt's Dig.*, and such ex parte proceedings "bind and conclude the whole world" unless and until avoided in some mode prescribed by law. *Freeman on Judgments, sec.* 607-8; *Gantt's Dig.*, 5780-1-2.

No trial having been had in the Circuit Court, no retrial could be had in Chancery, and the proceedings were *coram non judice.*

Argues on the merits, &c.

### STATEMENT.

Eakin, J. On the 12th of April, 1874, G. W. Logan died unmarried and childless, and, as was supposed, intestate. His heirs were two sisters and a niece, the daughter of a deceased sister, who, with their husbands, are

·complainants; also a brother, since dead, whose children, with the Administrator of G. W. Logan, are defendants. Some time after the death of the latter, a paper purporting to be a will was discovered. It was probated in common form, without notice, and defendant Rogers was appointed Administrator, *cum testamento annexo.* The will vested all the property in the children of the brother.

This bill was filed on the 29th of May, 1880, within three years after the probate, contesting the validity of the will, and seeking to set aside the probate. Complainants pray that a re-trial of the question may be had by a jury, on an issue of law to be made, and that they may recover their proportional share of the estate.

A general demurrer was overruled, and defendants answered, denying the facts, or the effect of the matters charged as rendering the will invalid. Upon the issues thus arising, and without any formal issue of *devisavit vel non* there was a trial by jury and verdict for defendants.

Complainants moved for a new trial in proper form, upon the following grounds:—First and second, for error in refusing and giving instructions; third, in excluding testimony; fourth, because the verdict was against law and evidence, and fifth, because the Court erred in allowing the cause to be tried without first directing an issue to be made up to try the validity of the will, and having the jury sworn to try whether it was or not the will of the deceased. The motion was denied, judgment entered, a bill of exceptions taken, and an appeal.

\ OPINION.

The question is presented *in limine* whether or not a Court of Chancery had jurisdiction of the subject matter, in the form presented and under the circumstances. It must be confessed that the changes in our Probate law, effected, first, by the Civil Code of 1868, adopted almost

WILLS: Probate of: Jurisdiction.

literally from Kentucky; then by the abolition of the Probate Courts in 1873, and the transfer of original jurisdiction to the Circuit Courts, where it had formerly been appellate; then by the verbal alterations made in an effort to harmonize the system in Gantt's Digest; then by the Constitution of 1874, which recreated the Probate Courts, restored their original jurisdiction, and meant to make it exclusive, have altogether introduced confusion and difficulty in the practice regarding the probate and contest of wills, which will require legislative action to entirely dispel, with the aid of a careful Digester. Meanwhile we must make the best of the *disjecta membra* of the old systems, which float in the confused whirlpool of changes.

It is not necessary, here and now, to determine whether the provision for an issue of *devisavit vel non* contained in Gould's Digest (Sec. 32, Ch. 180) has survived the Civil Code, and passed the portals of the schedule of the Constitution of 1874, which continued all laws, then in force, consistent with its provisions. The compiler and examiner of Gantt's Digest evidently supposed it had been superseded by the provisions of the Code, and omitted it from the latter compilation. Nevertheless, in the case of *Tobin et al v. Jenkins et al*, 29 *Ark.*, 151, which arose after the Code, it was recognized by this Court, *sub silentio*, as unobjectionable. There have been no decisions upon the point in cases arising under the Constitution of 1874, which, as we have said, resuscitated the Probate Courts, and provided further, that they should have such *exclusive original jurisdiction* in matters relative to the probate of wills "as is now vested in the Circuit Courts, or may be, hereafter prescribed by law." The proceeding by petition in the Circuit Court for an issue of *devisavit vel non* under Gould's Digest is in so far original that it is independent

of any appeal, or supervisory writ, but lacks originality and partakes somewhat of a supervisory character, in that it must be founded on some previous action of the Probate Court in establishing or rejecting a will, which it is the object of the petition to amend and rectify.

This case does not demand a definite and authoritative decision of this very important question, and we deem it prudent to waive it, until a case arises in which it may be directly presented and argued by counsel.

This was not a proceeding by petition to the Circuit Court for an issue of *devisavit vel non*, under the above cited section of Gould's Digest, but a proceeding in equity under the somewhat analogous provision of the Civil Code in the 12th clause of Section 513 transferred into Gantt's Digest as Section 5794. It provides "that any " person interested who, at the time of the decision in " the *Circuit Court* resided out of this State and was pro- " ceeded against by order of appearance only, without " actual appearance, or being personally served with pro- " cess; or *any other person* interested who was not a party " to the proceedings by actual appearance or being person- " ally served with process, may within three years after such " final decision in the Circuit Court, by a bill in Chancery, " impeach the decision and have a retrial of the question of " Probate, and either party shall be entitled a jury for the " trial thereof."

This, evidently, is what was supposed to have suspended the proceeding by petition under Gould's Digest, and as it is confined in terms to matters which had already been properly before the Circuit Court, there can be no question of its constitutional validity. This leads us to enquire what "final deicsion" is meant, and makes it necessary to take a short review of our legislation and the history of Gantt's Digest.

The gentlemen who, in 1868, composed the General Assembly, and, in theory, represented the people were not careful in their laudable, if not well directed, zeal in reforming the old order of things in Arkansrs, to observe the injunction to *festina lente.* One step which had the double merit of despatch and ease, was to take the Civil and Criminal codes of practice of a sister State, as a solid body, and throw them into our system without much care as to how they might adjust themselves with our constitution and previous legislation. It is not quite clear, for instance, whether the old provision for an issue of *devisavit vel non,* can find a place in the mosaic.

The Chapter on Probate of Wills (Sec. 513) provided that they should be submitted to the Probate Court, either with or without notice to parties interested, and there proved and recorded, (see clauses 1st, 7th, 8th, 9th and 11th). An appeal was provided to the Circuit, and thence to the Supreme Court, (clause 2d). In the former, when the cause should be taken there, it was provided that all necessary parties should be brought in; and that upon the demand of any one of them, a jury should be empannelled to try "which or how much of any tastamentory paper produced is, or is not, the last will of the testator," subject to appeal or writ of error to the Supreme Court. Then came the 12th clause above first quoted, for the protection of those who had not been made parties. Obviously this last clause could not authorize a proceeding in Chancery where there had never been any appeal to the Circuit Court, nor decision there.

Afterwards, Courts of Probate were abolished entirely, and all their jurisdiction was transferred to the Circuit Courts. The compilers of Gantt's Digest, in adapting it to the changes of jurisdiction thus effected, often use the words "Circuit Court" on "Courts having Probate jurisdiction" in place of Probate Courts. Then came the constitution of

1874 restoring the former jurisdiction of the Probate Courts, leaving in the Circuit Courts only an appellate jurisdiction. This required a restoration of the original language of the acts. It did not follow, however, that the word "Circuit Court" used in section 5794 was to be considered as changed and made to refer to the *Probate Courts,* so as to confer the right to file the bill on the final decision of the latter. It had no reference to them before they were abolished, but originally applied as shown above only to Circuit Courts in cases which had been appealed and retried. Nor can that section now authorize such a bill as this based upon a mere probate in common form.

. The Chancellor erred in exercising jurisdiction. The bill should have been dismissed on demurrer, or on final hearing. The judgment must not stand as *res judicata* regarding the validity of the will, but that must rest upon the judgment of the Probate Court.

Let a judgment be entered here, reversing so much of the judgment below as establishes the will, leaving it to stand as affirmed for costs against the plaintiffs.