## MARY JANE HUBBARD ET AL., APPELLANTS, *v.* THOMAS H. HUBBARD, RESPONDENT.

WILLS, PROOF OF—COUNTY COURTS—EXCLUSIVE JURISDICTION. — County courts are invested with exclusive jurisdiction in the first instance to take the proof of wills, and their judgments and decrees are conclusive until vacated either by proceeding on appeal or impeached by direct proceeding.

IDEM—WILL MUST BE RE-PROBATED WHEN DIRECTLY ATTACKED—ONUS PROBANDI.—Where a will has been probated in common form and the validity of the will is attacked by a direct proceeding, it lies upon the person seeking to maintain the validity of the will to re-probate the same by original proof in the same manner as if no probate thereof had been had except as to such matters as are admitted by the pleadings. In every such proceeding the *onus probandi* is upon the party propounding the will.

TESTAMENTARY CAPACITY.—Testamentary capacity implies that the testator fully understands what he is doing, and how he is doing it; he must know his property and how he wishes to dispose of it among those entitled to his bounty. If he can choose with understanding and reason between one disposition and another, it is sufficient.

CHARACTER OF WILL, NOT SUFFICIENT TO SET IT ASIDE.—While the character of the provisions contained in a will may be considered in connection with any other evidence tending to show undue influence, it can not of itself be considered evidence of such influence.

IDEM—OPPORTUNITY AND MOTIVE IN BENEFICIARY NOT ENOUGH.—To invalidate a will on the ground of undue influence, it is not sufficient to show that a party benefited by it had the motive and opportunity to exert such influence; there must be evidence that he did exert it, and so control the actions of the testator to such an extent that the instrument is not his will.

WITNESS—ORDER OF COURT EXCLUDING FROM COURT-ROOM.—It is error to reject the testimony of a witness on the ground that he was present in the court-room, in violation of an order of the court excluding the witnesses during the trial, unless it appears that the party calling him was in complicity with him. The witness, however, may be punished for contempt for violation of such order.

APPEAL from Marion County. The facts are stated in the opinion.

*Bonham & Ramsey,* for appellants.

*R. Mallory and Geo. H. Burnett,* for respondent.

By the Court, PRIM, J.:

The proceeding was originally commenced in the county court of Marion county, for the purposes of contesting the validity of the will of Joseph B. Hubbard, deceased. It is based on the ground of want of testamentary capacity in the testator, and also of undue influence exercised over him by his brother, Thomas H. Hubbard.

The following facts are developed by the pleadings and evidence produced at the trial: On March 8, 1877, Joseph B. Hubbard died in Marion county possessed of personal property of about the value of three thousand dollars. Mary Jane Hubbard is his widow, and Bertha Helen his infant daughter, aged eleven months at the time of her father's death, are the only heirs of said decedent.

Respondent, who is the brother of said decedent, filed in the county court of said county, a document bearing date of October 16, 1876, purporting to be the last will and testament of said Joseph B. Hubbard, and asked to have the same probated as such. That on April 5, 1877, said will was admitted to probate by said court *ex parte* and without notice to appellants. The respondent was thereupon appointed executor of the same, and immediately qualified and entered upon the duties of his trust.

By the provisions of said will there were demised to said Mary Jane Hubbard her wearing apparel and one bed and bedding, and unto said Bertha only one fourth of said decedent's estate, to be paid to her on arriving at the age of eighteen years, and the remaining three fourths of said estate unto the said Thomas H. Hubbard. Said Thomas was nominated as the executor thereof, and exonerated from giving any bond as such. He was also nominated as guardian of said Bertha Helen, and exonerated from giving any bond for the faithful performance of that trust.

Under the English practice there were two modes of proving a will of personal property. The "common form" in

which the will was propounded by the executor and proved *ex parte*, and the "solemn form" in which the next of kin of the testator were cited to witness the proceeding, and in which the proof was taken *per testes* or "in form of law," as it was called. When probate in solemn form was had it was binding and conclusive upon all the next of kin duly cited, unless fraud or collusion could be shown. But a probate in common form could be called in by any of the next of kin, and the executor required to show cause why it should not be revoked. Both of these forms have been substantially adopted in most of the states by statute. In this state probate in common form is the only one which appears to have been adopted by any positive enactment of the legislature. (Code secs. 1051, 1052, 1060, 1061.)

It is provided in this state that county courts shall be invested with exclusive jurisdiction in the first instance to take the proof of wills. (Code, sec. 969.) And their judgments and decrees are held to be conclusive in collateral proceedings, and in every other instance until they are vacated by proceedings on appeal, or successfully impeached in some known and recognized legal method. (*Jones* v. *Dove*, 6 Or. 188.)

It is claimed by counsel for appellants that where a will has been probated "in common form" or by proceedings wholly *ex parte*, as in this case, and the validity of the will is attacked by a direct proceeding, it is incumbent upon the person seeking to maintain the validity of the will to reprobate the same *de novo*, by original proof, in the same manner as if no probate thereof had been had. This proposition, we think, is correct, if the allegations are sufficiently broad to question the validity of the will, and the competency of the proof as to its execution. In every such proceeding the *onus probandi* lies upon the party propounding the will; and he must prove every fact, which is not waived or admitted by the pleadings, necessary to authorize its probate in the county court. Whatever may be the form of the issue as to every essential and controverted fact he holds the affirmative. (1 Bradford's Surrogate 94; 1 B. Monroe, 394; 46 Mis. 147.)

By reference to the pleadings it will be seen that it is admitted: 1. That the will in question was executed in form as provided by law, which implies that it was reduced to writing and signed by the testator, in the presence of the attesting witnesses, who also signed it at his request and in his presence and in the presence of each other: 2. That it was admitted to probate upon the *ex parte* application of respondent, by calling the attesting witnesses before the county court and taking their written affidavits as to its execution: 3. That it was admitted to record upon such *ex parte* application.

But it is alleged by appellants that, at the time of making said will, Joseph B. Hubbard was not of sound and disposing mind or memory; and, further, the will was the result of and caused by the fraudulent acts, imposition, and undue influence and constraint exercised upon and over him by respondent.

Each of these allegations being specifically denied by the answer of respondent, constitute, in our opinion, the only material issues of fact in the case. If either of these facts should be fully established by the evidence, it may be well said it is in no respect the will of Joseph B. Hubbard.

Under our statute no one can dispose of his property by " last will " unless he is of sound mind at the time when he executes it. (Misc. Laws, 787.)

A sound mind, or "testamentary capacity, implies that the testator fully understands what he is doing and how he is doing it; he must know his property and how he wishes to dispose of it among those entitled to his bounty. If he understands in detail what he is doing, and chooses with understanding and reason between one disposition and another, it is sufficient." (*Daniel* v. *Daniel*, 39 Penn. State, 191.)

Testing the capacity of the testator by this standard we think it very clearly appears from the evidence that he was endowed with sufficient mental capacity to execute the will in question. In the opinion of all of his intimate acquaintances he was of sound mind and ordinary intelligence.

It is admitted by counsel for appellants in their brief that

they have not been able to show that decedent was *non com-
pos mentis*, but claim that he was physically and mentally
debilitated to such an extent as to render him susceptible
to undue influence. They also admit that they have not
shown, by direct or positive evidence, that respondent exer-
cised undue influence over his brother in procuring the
execution of said will; but that he has testified positively
that he did not exercise such influence.

But it is urged on behalf of appellants, with great earnest-
ness, that the document presented here as the last will and
testament of Joseph B. Hubbard shows upon its face, by
its unjust and unnatural disposition of the testator's prop-
erty, that it could not have been the production of a rational
mind unswerved by improper influences. While we agree
with counsel that the provisions of this will when viewed
from our standpoint appear to be unjust, it is not for us to
judge of their justice, or the reasons which induced the
testator to discriminate as he did in favor of his brother
against his wife and infant child. While the character of
those provisions may be considered in connection with any
other evidence tending to show undue influence, it cannot
of itself be considered evidence of such influence. (68 N.
Y. 148.)

It appears from the evidence that Thomas H. Hubbard,
the principal beneficiary under this will, was the brother of
decedent, and that they were partners in business and on
intimate terms; that about the time the will was executed,
or shortly thereafter, decedent and his wife separated, and
that he went to his brother's house and remained there until
he went east of the mountains for his health. His brother
also went east of the mountains with him, to take care of
him—he being in very feeble health at that time. This will,
however, was executed a few days prior to that time. It also
appears that he and his wife did not live agreeably together;
that several quarrels had taken place between them, and
that the wife had commenced a suit for divorce.

But, "to invalidate a will on the ground of undue influ-
ence there must be affirmative evidence of the facts from
which such influence is to be inferred. It is not sufficient

to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it and so controlled the actions of the testator, either by importunities which he could not resist or by deception, fraud or other improper means, that the instrument is not really the will of the testator." (68 N. Y. 148.)

"It must be made to appear that it was obtained by means of influence amounting to moral coercion destroying free agency, or by importunity which could not be resisted, so that the testator was constrained to do that which was against his actual will, but which he was unable to refuse or too weak to resist." (*Brick* v. *Brick*, 66 N. Y. 144; 1 Jarman on Wills, 36, 39; Redfield on Wills, 529, 530.)

. The evidence in this case fails to show that it comes within these rules. It is also claimed that the county court committed error in refusing to allow John Hamilton, a witness for appellants, to testify, on the ground that he was present in the court-room, in violation of the order of the court excluding the witnesses from the court-room during the trial. This was error in the court unless appellants were in complicity with the witness. The witness might have been punished for contempt in disobeying the order of the court, but an innocent party should not be deprived of the evidence on that account.

But we think it sufficiently appears that appellants were not injured by the ruling of the court. The evidence was in relation to a collateral matter and not material. The decree of the court below should be affirmed.