# CASES

## ARGUED AND DETERMINED

### IN THE

## United States Circuit and District Courts.

---

### SHARON v. HILL.

*(Circuit Court, D. California. March 3, 1884.)*

EQUITY — JURISDICTION TO ANTICIPATE THE COMMISSION OF A FRAUD — FORGED MARRIAGE CONTRACT.

    Courts of equity may inquire into and annul a forged or fraudulent instrument of writing claimed to be a contract of marriage before it is sought to be put into effect, in order to disarm the fraudulent beneficiary of a dangerous power that might hereafter be exerted to the detriment of innocent parties.

This is a suit in equity to declare null and void, and to cancel, an instrument claimed to be a contract of marriage, executed under the laws of the state of California, between William Sharon, of the state of Nevada, complainant, and Sarah Althea Hill, of the state of California, defendant, said contract being claimed to be a forgery. This contract is in the words and figures following, to-wit:

"In the city and county of San Francisco, state of California, on the twenty-fifth day of August, A. D. 1880, I, Sarah Althea Hill, of the city and county of San Francisco, state of California, aged 27 years, do here, in the presence of Almighty God, take Senator William Sharon, of the state of Nevada, to be my lawful and wedded husband, and do here acknowledge and declare myself to be the wife of Senator William Sharon, of the state of Nevada.

                        "SARAH ALTHEA HILL.

"*August* 25, 1880, *San Francisco, Cal.*

"I agree not to make known the contents of this paper or its existence for two years, unless Mr. Sharon himself see fit to make it known.

                        "S. A. HILL.

"In the city and county of San Francisco, state of California, on the twenty-fifth day of August, A. D. 1880, I, Senator Wm. Sharon, of the state of Ne-

vada, aged 60 years, do here, in the presence of Almighty God, take Sarah Althea Hill, of the city and county of San Francisco, Cal., to be my lawful and wedded wife, and do here acknowledge myself to be the husband of Sarah Althea Hill.

"WM. SHARON, Nevada.

"*August* 25, 1880."

There was at the time of the commencement of this action, and is still pending and on trial, an action by the defendant herein, in the state courts, for a divorce from the complainant herein, based on the marriage claimed to be consummated by this contract.

The defendant demurred to the bill herein on the ground that it does not present a case for equitable relief.

*W. H. L. Barnes*, for complainant.

*Tyler & Tyler*, for defendant.

Before SAWYER and SABIN, JJ.

SAWYER, J., (*orally.*) This is a suit in equity to declare null and void, and to cancel, an instrument which is claimed to be a contract of marriage between William Sharon, complainant, and Sarah Althea Hill, defendant. The point of the demurrer interposed is that the bill does not present a case for equitable relief. We have examined the question fully, and we are satisfied, upon the principles established by the various authorities cited by complainant's counsel, that it is a proper case for equitable jurisdiction. The bill presents a case of forgery and fraud. The contract purports to have been drawn and executed in pursuance of the provisions of section 75 of the Civil Code of California. The Code of California makes a marriage contract purely a civil contract for all legal purposes, like any other civil contract. This supposed contract is alleged to be a forgery, and to be fraudulent. It purports to be in writing, and to be signed by the parties; and the defendant claims, by virtue of it, to be the wife of complainant, and to have an interest in his property, which is alleged to be of the value of several millions of dollars. There is no adequate remedy at law for complainant against the claim set up under the alleged contract, and no means at law to annul it at the suit of complainant. The defendant can choose her own time for enforcing her claim under the alleged contract, even after the death of the other party. Fraud has always been one of the principal heads of equity jurisdiction.

The instrument in question is alleged to be a forgery and a fraud. If it is a forgery, it is of course a fraud also. The only parties who appear to have any personal knowledge of the facts, so far as indicated, —who, personally, know anything about this transaction,—are the two parties to the alleged fraudulent contract. One is alleged to be many years older than the other; the complainant being alleged to be 60, and defendant 27, years old. The elder, in the ordinary course of nature, is more liable to die, and the contract, in such an event, would be in control of defendant, without any testimony to defeat the

fraud, if fraud there be. The right to several millions of property might be, in after years, affected and controlled by reason of the alleged fraud. A great wrong and injustice may be thus perpetrated in consequence of it, unless a court of equity can take hold of and cancel it. There is no way, by an action at law, that we are aware of, to meet the conditions, or effectually dispose of this instrument. We are satisfied from the authority we shall cite, and numerous other authorities to the same effect, that this is a proper case for equitable relief, if the allegations in the bill be true; and, for the purposes of the demurrer, their truth is admitted.

We think this case is within the rule that is often laid down on this subject. Story, in his work on Equity Jurisprudence, § 700, after speaking of various instruments that may be used for fraudulent or improper purposes, and which may be canceled by a court of equity on the ground of fraud, says:

"If it is a mere written agreement, solemn or otherwise, still, while it exists, it is always liable to be applied to improper purposes, and it may be litigated at a distance of time when the proper evidence to repel the claim may be lost or obscured, or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present time."

Story says further, in section 701:

"The whole doctrine of courts of equity on this subject is referable to the general jurisdiction which it exercises in favor of a party *quia timet.* It is not confined to cases where the instrument, having been executed, is void upon grounds of law and equity, but it is applied, even in cases of forged instruments which may be decreed to be given up without any prior trial at law, on the point of forgery."

If this instrument is not void upon its face, then its validity depends upon testimony *aliunde*, and testimony which rests wholly *in parol*, which is liable at any time to be wholly lost, or placed beyond the reach of the parties injured by the fraud. In case of the death of complainant, the contract, and the means of enforcing it, honest or otherwise, would be wholly in the control of the alleged forger and fraudulent claimant. She would be mistress of the situation, and the heirs of a large estate might be wholly at her mercy. There is a charge of forgery and fraud; and we think the instrument, if a forgery and fraud, ought to be canceled. If there be no remedy in equity for such a wrong as is charged, then the law is, indeed, impotent to protect the community against frauds of the most far-reaching and astounding character. If there is no precedent for a case upon the exact state of facts disclosed by the bill, it must be because no instance exactly like it has ever before arisen. The principle, however, is established, and the occasion has arisen for making a precedent, if none ever existed before.

The demurrer is therefore overruled, with leave to answer on or before the next rule-day, on payment of the usual costs.