## RICHARDSON et al. v. GREEN et al.

### (Circuit Court of Appeals, Ninth Circuit. April 19, 1894.)

### No. 119.

**1. WILLS—CONTEST OF VALIDITY.**
Under the laws of Oregon the validity of a will cannot be contested in the proceedings to probate it, which are purely ex parte; but such contest must be made the subject of a direct attack upon the will in a formal suit inter partes.

**2. SAME—JURISDICTION OF FEDERAL COURTS.**
The proceeding under the laws of Oregon to contest the validity of a will which has been already admitted to probate, being a suit between parties, is one of which the United States circuit court may take jurisdiction, where the amount in controversy is sufficient, and the parties are citizens of different states.

**3. SAME—ADMISSION OF PROBATE.**
In a suit to set aside a will on the ground that it was forged, where the bill fails to allege the probate of the will, but defendant's answer alleges that it was admitted to probate, the defect in the bill is cured by the answer, and a demurrer on the ground of such defect must be regarded as waived.

**4. SAME—LACHES.**
In a suit to set aside a will as being forged, no laches can be imputed to plaintiff on account of the length of time which has elapsed since testator's death, where the suit was commenced immediately after the will was probated by the parties claiming under it, and there are no rights of third persons involved.

Appeal from the Circuit Court of the United States for the District of Oregon.

This was a suit in equity by Clarinda Green and others against Julia Terwilliger and others. There was a decree for complainants (56 Fed. 384), and defendants appeal.

C. A. Dolph and R. Williams, for appellants.

L. L. McArthur and E. W. Bingham, for appellees.

Before McKENNA, Circuit Judge, and KNOWLES, District Judge.

KNOWLES, District Judge. This was an action brought to cancel a certain deed purported to have been made by Philinda Terwilliger to her daughter, Julia Terwilliger, and also a certain will devising to said daughter certain real estate. Said instruments, among other charges concerning the same, are alleged to be forged, and for this reason their cancellation is sought. The bill of complaint is as follows:

"To the Honorable, the Judges of the Circuit Court of the United States for the District of Oregon: Clarinda Green, Anna B. Green, Philinda Green, Mary F. Green, and Mary O. Green, a minor eleven years old, by her next friend, Mary F. Green, her mother, all residents of Nordhoff, Ventura county, state of California, and all citizens of said state of California, bring this,

their bill, against James Terwilliger, Julia Terwilliger Richardson, and T. M. Richardson, her husband, who are all residents of Multnomah county, state of Oregon, and citizens of said state of Oregon. And thereupon your orators complain and say that the defendant James Terwilliger, and his wife, Philinda Terwilliger, became the owners by settlement, etc., of a donation land claim under the act of congress approved September 27, 1850, commonly called the 'Donation Law,' and the acts amendatory thereof; said claim being notification No. 640, certificate No. 1,078, and situate and described as follows: 'Claim 39, notification 640, certificate 1,078, situate in section 9, 10, 15, and 16, in township 1 south, range 1 east, Willamette meridian, containing 630 and 34-100 acres, in Multnomah county, state of Oregon. That the east half of said claim was duly designated by the surveyor general to be held by said wife, Philinda Terwilliger, in her own right. That said Philinda Terwilliger, while still seised as aforesaid of a large portion of said claim, to wit, about 150 acres of the east half of said claim, of the value, at this time, of not less than $25,000, died intestate on or about October —, 1873. That said Philinda Terwilliger had living at the time of her death two children, namely, William O. Green, by her first husband, John H. Green, and the defendant Julia, now intermarried with defendant T. M. Richardson; and that they, said William O. Green and said Julia, were the sole heirs of the said Philinda Terwilliger, and succeeded by inheritance to all the real property of the said Philinda Terwilliger, subject to the estate by the curtesy therein of her said husband, the defendant James Terwilliger. That said James Terwilliger, ever since the death of his said wife, Philinda Terwilliger, has been, and still is, in the lawful possession of all said property as tenant by the curtesy. That your orator Mary F. Green was the wife of said William O. Green, and that said William O. Green died intestate on or about May 21, 1878, without ever having sold or disposed of his interest, or any portion therein, in the estate of his mother, said Philinda Terwilliger. That said William O. Green had by his said wife the following named children, who survived him, and 'were his sole heirs, to wit: Fannie E. Green, and the complainants Clarinda Green, Anna B. Green, Philinda Green, and Mary O. Green. That said Fannie E. Green, when eleven years old, died, on or about April 11, 1883, without her interest in said estate having been disposed of, leaving her said mother, Mary F. Green, and her said four sisters, her sole heirs. That your orator Mary F. Green is entitled to the undivided 1-50th part, and your other orators are each entitled to the undivided 6-50th parts, and the defendant Julia Richardson is entitled to the undivided 25-50th parts of all the real property which the said Philinda Terwilliger owned at the time of her death, subject to the estate of the said James Terwilliger therein as tenant by the curtesy. That for several years prior to and up to the time of the death of the said Philinda Terwilliger she resided on said claim with the defendants James Terwilliger, and their said daughter, Julia. That soon after the death of said Philinda Terwilliger, said daughter Julia and said T. M. Richardson were intermarried, and that they and the other defendant, James Terwilliger, have ever since resided together. That the defendants have informed your orator that said Philinda Terwilliger had willed all of said real property to her said daughter Julia, to the entire exclusion of your orators, and that the defendants had the will in their possession; and at other times defendants have stated that said Philinda Terwilliger had deeded said real property to said Julia, and that said James Terwilliger had the deed. Your orators are informed and believe and allege that the defendants have such a pretended deed in their possession or under their control, but your orators allege and charge that any will and any deed which the defendants have, or either of them has, or under which defendants claim, or either of them claims, which purports to divest your orators of any rights or interest which they have as aforesaid in the estate of said Philinda Terwilliger as heirs at law is a false, forged, and fraudulent instrument. Your orators allege that no will of said Philinda Terwilliger has ever been filed for probate, nor has any deed from her to any of the defendants ever been filed for record, nor has said pretended deed or will ever been exhibited to your orators; wherefore your orators are unable to give a more particular description of said alleged writing, or of its contents. Your orators allege

and charge that the said several claims, representations, and pretensions of the defendants are wholly false, and are made by them, for the purpose and with the intent of injuring your orators, and defrauding them of their said estate, and that the defendants purposely withhold said alleged will from probate, or said alleged deed from record, and from the inspection of your orators, in order that the evidence of the validity of said deed or will may be lost or obscured by lapse of time, and in order that the witnesses, or pretended witnesses, to said will or deed may die before the existence of such instrument becomes known, and in order that your orators may be disabled from contesting its invalidity with as much ability and force as they might have done if the same had been produced and proven or recorded at the proper time. Your orators allege that said James Terwilliger, since the death of his wife, Philinda Terwilliger, has sold considerable portions of said east half of said claim, and conveyed by deeds purporting to convey title to the same in fee simple. And that your orators believe, and therefore allege, that if he is not restrained by this honorable court, he will likewise sell and convey other portions thereof, and thereby throw a further cloud upon the title of your orators. In consideration whereof, and forasmuch as your orators are remediless in the premises by any action at law," etc.

Then follows the prayer to the bill, and also some seven interrogatories propounded to defendants as to their knowledge of said deed or will or both, and as to where the same are, and as to whether they claim to own an interest in said land, etc. To this bill defendants filed a demurrer, on the grounds: First, that the matter specified therein is within the jurisdiction of courts of probate, and is not within the jurisdiction of the circuit court; and, further, because there is not in the bill such a statement of such a case as entitled plaintiffs to any discovery from defendants, or to any relief against them, or either of them. This demurrer was overruled by Judge Deady. Subsequently defendants filed their plea in bar to said bill, setting forth the execution of the will by Philinda Terwilliger, and the probate of the same by the county court of Multnomah county, state of Oregon, on the 27th day of March, 1889. This was overruled. Defendants then filed their answer to the bill, denying the allegations of the same as to the forgery of the will and deed, and alleged that both were duly executed, and then alleged that the will was probated as set forth in the plea. Upon the bill, answer, and replication, the cause went to trial, and upon the facts the court found that both deed and will were forgeries. It will be seen that the parties have changed somewhat since the commencement of the cause, Julia Richardson having died in the mean time, and two of the plaintiffs having married.

The first question for consideration: Did the circuit court have jurisdiction of this cause, or was it within the exclusive jurisdiction of the county court of Multnomah county, Or., where Philinda Terwilliger died? The constitution of the state of Oregon provides that "the county court shall have the jurisdiction pertaining to probate courts," etc. Const. art. 7, § 12. The laws of Oregon provide: "The county court has the exclusive jurisdiction in the first instance pertaining to a court of probate, that is, (1) to take proof of will." There is no definition which describes generally the jurisdiction pertaining to probate courts. They are courts created, as a rule, by statute, and their jurisdiction defined by

statute. In each state where such courts exist their powers are defined by its laws. Often powers are given to them which are different from those which pertain to such courts in any other state. There is no common-law definition which applies to such courts. In considering the constitution of Oregon, then, we must have recourse to the legislation of that state to determine what jurisdiction pertains to probate courts. The territory of Oregon had, by virtue of its organic act, probate courts, and I think in determining what is meant by the clause in the constitution of Oregon we may refer to the laws of that territory in limiting the jurisdiction of the same. I have not found them, so far as they pertain to the question here presented, different from the present laws of Oregon. In determining what is the probate of a will under the laws of Oregon, I find no better guide for this court than the decisions of the highest court of that state.

In the case of Hubbard v. Hubbard, 7 Or. 42, the supreme court said:

"Under the English practice there were two modes of proving a will of personal property,—'the common form,' in which the will was propounded by the executor, and proved ex parte; 'the solemn form,' in which the next of kin of the testator were cited to witness the proceedings, and in which the proof was taken per testes, or in form of law, as it was called. * * * In this state, probate in common form is the only one which appears to have been adopted by any positive enactment of the legislature. Code, §§ 1051, 1052, 1060, 1061."

The same conclusion was reached in Luper v. Werts, 19 Or. 122–126, 23 Pac. 850. In this last case the court urges that it would be better for the legislative authority to require the probate court to issue citation to be served on parties interested in the estate, and have a contest concerning any will. This, I think, shows there was no law in Oregon, when this action was commenced, to warrant any contest upon the validity of a will at the time the same was being probated. What was the effect of probating a will in this manner? The supreme court of Oregon has held that in that state the will could not be attacked in any collateral proceeding. Hubbard v. Hubbard, supra. Under the English law, and in most of the states, a will devising real estate, so far as it affected the same, could be attacked collaterally, such as in an action of ejectment. The probating of a will in the common form had no effect as regards real estate in England. 1 Jarm. Wills, p. 51 (*28). This is a rule in most of the states, but in Oregon a different rule has been established. Under the decisions of the supreme court of Oregon, after a will has been probated, then any one interested in the estate can attack the will in what is called a "direct proceeding." Jones v. Dove, 6 Or. 188; Hubbard v. Hubbard, 7 Or. 42; Brown v. Brown, Id. 299; Clark's Heirs v. Ellis, 9 Or. 133; Chrisman v. Chrisman, 16 Or. 128, 18 Pac. 6; Luper v. Werts, 19 Or. 122, 23 Pac. 850; Potter v. Jones, 20 Or. 240, 25 Pac. 769; Rothrock v. Rothrock, 22 Or. 551, 30 Pac. 453. It is important to determine the nature of this proceeding. In the first place, we find that there are parties to the same (see the style of the above causes); that it is not an

action in rem, in which a contest is made against the validity of the will, and no parties in the sense that one is plaintiff and the other defendant. In the case of Clark's Heirs v. Ellis, supra, we find in the statement of facts the following:

"This proceeding was originally commenced in the county court of Union county by petition of respondents as the heirs at law of William Clark, deceased, against the appellants, to set aside the will of said Clark, and to revoke the probate thereof."

In the case of Luper v. Werts, supra, I find that there Sarah L. Luper filed a petition in the county court to vacate the order admitting the will to probate, and alleging therein that the pretended will was void, etc. The administrators with the will annexed, one of whom was a devisee in the will, and the other the husband of one of the devisees, filed an answer to this petition. It is evident that this was a trial between the parties. In the supreme court one party is termed the appellant and the other the respondent. In the petitions named, as far as can be observed, the same facts are set forth as would be under the same circumstances in a bill in equity.

We now come to the question, can this proceeding be classed as a suit of a civil nature at common law, or in equity? It is provided in section 629, Rev. St. U. S., that:

"The circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law, or in equity," etc.

In the case of Weston v. City Council, 2 Pet. 449, Chief Justice Marshall said of the term "suit":

"The modes of proceeding may be various, but, if the right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

In the case of Gaines v. Fuentes, 92 U. S. 10, Justice Field, in delivering the opinion of the court, said:

"The suit in the parish court is not a proceeding to establish a will, but to annul it as a muniment of title, and to limit the operation of the decree admitting it to probate. It is in all essential particulars a suit for equitable relief, to cancel an instrument alleged to be void, and to restrain the enforcement of a decree alleged to have been obtained upon false and insufficient testimony."

An examination of the dissenting opinion of Justice Bradley in this case will show that the question as to whether such an action was a suit in equity of a civil nature was the one under discussion. The court held it was such a suit. In this case, also, we observe pointed out the difference between a proceeding in a probate court to prove and establish a will and a case where the validity of a will is litigated between parties. After stating that a federal court has no jurisdiction of the proceeding to probate a will, Justice Field says:

"The reason lies in the nature of the proceeding to probate a will as one in rem, which does not necessarily involve any controversy between parties. Indeed, in the majority of instances, no such controversy exists. In its initiation all persons are cited to appear, whether of the state where the will is

offered or of any other states. From its nature, and from the want of parties, or the fact that all the world are parties, the proceeding is not within the designation of cases at law or in equity."

An examination of the case of Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, will show that the supreme court again makes a distinction between the probate of a will and an action to try the validity of a will between parties, and when there is a decree or judgment which affects only the parties to the action.

In the Broderick Will Case, 21 Wall. 503, it is stated that ordinarily the probate of a will is a proceeding in rem. It should be observed that in California the proof of a will is of a solemn character, and much different from the ex parte mode of probating a will in Oregon. The suit for contesting a will after the probating of the same in Oregon is undoubtedly one between parties, and binding only the parties thereto, and hence is such a one as a circuit court of the United States could take jurisdiction of when the amount in controversy is sufficient, and the parties plaintiff and defendant citizens of different states.

In the suit of Gaines v. Fuentes, supra, after stating that a suit to annul a will and limit the operation of its probate was in the nature of a suit for equitable relief, the supreme court again says:

"There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not designated 'suits in equity,' but they are none the less essentially such suits; and if by the law obtaining in the state, customary or statutory, they can be maintained in a state court, whatever designation that court may bear, we think they may be maintained by original process in a federal court where the parties are, on the one side, citizens of Louisiana, and the other, citizens of other states."

Here it will be seen that if a suit is essentially a suit of a civil nature for equitable relief, and it is customary to prosecute the same in any state court where the action arose, whether the same is a county court or a probate court or a district or circuit court, the proper federal court will have concurrent jurisdiction of the same with such state courts, where the amount is sufficient and the parties are citizens of different states, as prescribed by the United States statutes. It should be observed, also, that when it is customary for such state courts to hear and determine such equitable suits, a United States court, under proper conditions, may hear them. It is not necessary that a statute should exist authorizing the same. The suit in the county court of Oregon in such matters is not authorized directly by any statute, but is a customary exercise of jurisdiction. It was, I think, the intention of the court to approve of the above view in the case of Ellis v. Davis, supra. In it the court said:

"And where provision is made by the laws of a state—as is the case in many—for trying the question of the validity of a will already admitted to probate by a litigation between parties in which that is the sole question, with the effect, if the judgment shall be in the negative, of rendering the probate void for all purposes as between the parties and those in privity with them, it may be that the courts of the United States have jurisdiction, under existing provisions of law, to administer the remedy and establish the right in a case where the controversy is wholly between citizens of different states."

In the Broderick Will Case it was admitted, if a state by statute authorized the bringing of a suit to declare a will void in its courts of law or equity, the same could be maintained in a proper case in a federal court. The views here expressed are supported by the case of Brodhead v. Shoemaker, 44 Fed. 518. I do not think the case of In re Cilley, 58 Fed. 977, can be considered as an authority against them. That was an attempt to remove a proceeding probating a will, and which had been appealed from the probate court to a higher court. As near as can be collected from the statement of the facts, it was a proceeding in rem, in which a contest was presented, and not a suit between parties. The title of the cause, In re Cilley, clearly indicates this.

It is urged by appellants that this suit cannot be maintained, because the appellees had a plain, speedy, and adequate remedy at law. No such remedy has been pointed out to this court under the laws of Oregon. It is true that in Ellis v. Davis, supra, the court decided that under the laws of Louisiana the complainant had a remedy at law in an action of revindication. This action would seem to be somewhat in the nature of an action of ejectment at common law, and the action to recover possession of real estate under the code practice. The will devising real estate could be thus attacked in England and many of the states, but in Oregon, when a will is probated, it cannot be attacked in any collateral proceeding. James Terwilliger had the right to the possession of the property as a tenant by curtesy, and no action could be maintained against him for the possession of the premises. There seems to be a dispute between the counsel for the opposite parties in this case as to the right the plaintiff would have, under the laws of Oregon, to compel the production of the will in the probate court, and the probating of the same. Whether or not such right would exist depends upon the construction of a statute of that state which does not seem to have been interpreted by the highest court thereof. But let it be granted that plaintiffs could have caused the production of the will in the probate court, what relief would that have afforded them? As we have seen, the probating of the will would have been in the common form,—ex parte. They would not have been a party to the proceeding. What relief the course suggested would have afforded plaintiffs it is difficult to see.

There is another question of more moment and difficulty presented in the fact that at the time the bill was filed in this action the will had not been probated. Justice Matthews, in the case of Ellis v. Davis, supra, says:

"And as, by law, in almost all the states, no instrument can be effective as a will until proved, no rights in relation to it capable of being contested between parties can arise until preliminary probate has been first made."

The statement here would seem too broad. The truth is that a valid will, before it is probated, devises the title to the lands described in the will, which takes effect upon the death of the testator. The probating of a will in common form, as we have seen, in England, has no effect upon real estate. 1 Jarm. Wills, *28. By

some statute in England, passed in 1857, it would seem the probate of a will furnished prima facie evidence of its validity and contents. The only effect of probating a will in common form in most of the states is that it can be introduced in evidence. This, I think, is the effect of the decisions in Oregon. As a valid will conveys title to real estate to the devisees named therein, it would appear that the assertion of the devising by will of certain real estate by parties residing on the land would be a cloud upon the title of the heirs, and there ought to be some remedy for removing that cloud. In this case plaintiffs had no remedy at law. They could not bring an action to recover the possession of the property. The probating of the will afforded no relief to them. They would not be a party to the proceeding. It would be ex parte. Philinda Terwilliger died in 1873. This action was commenced in 1889. Sixteen years had elapsed since her death, and the deed had not been recorded, and the will was not probated. All this time there was a vague assertion of title to the premises in Julia Terwilliger, now by virtue of a deed, and again by virtue of a will. Plaintiffs had never seen these instruments. They had not been exhibited to them. The only remedy that could be afforded them would be to compel the probating of this will in an ex parte manner, so that they might bring the very suit they have in this case. It will be observed that under the decisions in Oregon, when a will is attacked as a forgery, after it is probated, the probating amounts to nothing, and the burden is cast upon the parties claiming under the will to prove the validity of the will. Hubbard v. Hubbard, supra. This is analogous to the rule that prevails in those states where a will to real estate can be attacked in a collateral action in a suit at law, such as ejectment. It would seem like demanding of plaintiffs a vain thing to institute proceedings to compel the probating of a will under such circumstances. It is true, there are decisions which hold that a court of equity will not try the validity of a will. Such is the rule expressed in 1 Story, Eq. Jur. 184, and 2 Story, Eq. Jur. 1445, 1446. This rule is based upon the ground that, as far as personal property is concerned, the probate of the will was vested in courts having the same powers as the ecclesiastical courts of England, and was conclusive; and, as to the real estate, the probating was not conclusive, and there was a remedy at law, namely, ejectment, in which the validity could be tried. At the time this rule was adopted no such conditions were presented as we find in Oregon. Considering the conditions of this case, that time was passing, and witnesses liable to die, and it would seem that a remedy ought to be afforded in a court of equity for the wrongs alleged on the part of plaintiffs. As Judge Sawyer said in the case of Sharon v. Hill, 10 Sawy. 48, 20 Fed. 1:

"There is a charge of forgery and fraud, and we think the instrument, if a forgery and fraud, ought to be canceled. If there is no remedy in equity for such a wrong as is charged, then the law is, indeed, impotent to protect the community against frauds of the most far-reaching and astounding character. If there is no precedent for a case upon the exact state of facts disclosed by the bill, it must be because no instance exactly like it has ever before arisen."

But let it be conceded that as a rule of law the relief asked in this bill could not be granted until the will was probated, that no rights in relation to it capable of being contested between the parties could arise, then how stands this case? The bill does not show that the will had been probated. But the plea and the answer in the case both show that on the 28th day of March, 1889,—24 days after the bill was filed,—said will was filed and probated in the county court in and for Multnomah county, state of Oregon. At this time the bill in the case could have been amended, and this fact set forth, although it was a fact that occurred after the bill was filed, and a condition of bringing the suit. Equity rule 28; Story, Eq. Pl. § 885, note 6; Fost. Fed. Pr. (1st Ed.) 240; Buck v. Buck, 11 Paige, 170. The appearance of defendants was made on the day the will was probated. There is a rule that when a complaint is defective in some material allegation, and that allegation is supplied by the answer, the defect in the complaint is cured. Pom. Rem. & Rem. Rights, § 579; Bate v. Graham, 11 N. Y. 237; White v. Joy, 13 N. Y. 83–86; Vernam v. Smith, 15 N. Y. 327. It is true, these decisions arose under the code pleading, but I see no reason why the same rule should not apply under any system of pleading. It would seem highly technical for a court to reverse a cause, and compel a new trial, when all the facts necessary for the proper determination of the cause are before it in the record. I find the same principle is maintained in the federal courts. In the case of Hagan v. Walker, 14 How. 29–35, facts stated in an answer were held to show that what would appear to have been a defective statement in the bill was not essential on account of the existence of these facts. In the case of Johnson v. Waters, 111 U. S. 640, 4 Sup. Ct. 619, it was held that the statement of facts in the answer could be called into requisition to show that a claim was not prescribed as stated. In the case of Cavender v. Cavender, 114 U. S. 464, 5 Sup. Ct. 955, a demurrer had been interposed to the bill for a defective statement of the cause of action, and overruled. The defendant answered. The supreme court said, in considering the error in overruling the demurrer: "If there was any defect in the statement in the bill, it was rendered immaterial by statements in the answer, and is not ground of complaint." The demurrer in this case, under such circumstances, must be considered as waived. The plea stated the very facts which made the bill good, if it was necessary that the will should be probated before the action was commenced. There were other reasons for overruling the plea, which, on account of the position I have taken as to the right to maintain the action in the circuit court, it is not necessary now to discuss.

Appellants urge that the appellees were guilty of laches in not bringing this suit at an earlier date, and that the bill should have stated facts showing the cause of the delay. In support of this proposition several decisions of the supreme court have been cited. These cases were all different as to the facts from the case at bar. In the case of Badger v. Badger, 2 Wall. 94, there was a sale of real estate at administrator's sale. It was a public sale, well known to the widows, heirs, and guardian. It was bid in by a friend of one

of the administrators, and soon after conveyed to him. This administrator was Daniel Badger, a brother of the other heirs. It was, some 25 years afterwards, claimed that this sale was void as fraudulent. Fraud in such a transaction does not make the sale void, but only voidable. A failure to avoid the same within a reasonable time is construed into a waiver of the fraud. It also appeared that the most important witnesses in the case had died, and that the brother who purchased the property had gone into possession of the same. The case of Marsh v. Whitmore, 21 Wall. 184, was a case where fraud was charged in a sale, and time had elapsed. The sale was a voidable one, and no sufficient excuse for the delay in seeking to avoid the sale appeared in the bill. The case of Wood v. Carpenter, 101 U. S. 140, was a case of the fraudulent confession of judgments and assignment of property. These were transactions which, if not disaffirmed, amounted to a waiver of the fraud. In this case at bar, the charge is that the deed and will are forgeries. The beneficiary in each instrument never took possession of the property under the same. It does not appear that any third person, under the strength of these instruments, has acquired any of the property described therein. The instruments have never been made records, as they should have been if genuine. Time will not make a forged instrument valid. It might be that a party might so conduct himself as to be estopped from asserting that an instrument was forged. It is stated in Pomeroy's Equity Jurisprudence (section 918) that when a person is deprived of his property by a forgery he can recover it from an innocent purchaser, if he has done nothing to estop him from asserting his right. In some cases it has been held that only when the adverse party has been lulled into doing something which he would not have done but for the neglect or delay in asserting a right will the doctrine of laches apply. Gibbons v. Hoag, 95 Ill. 45; Daggers v. Van Dyck, 37 N. J. Eq. 130; 12 Am. & Eng. Enc. Law, "Laches," p. 544. It would seem hardly to comport with a court appealing to right and conscience to hold that, unless an heir should bring a suit within what might be termed a reasonable time to cancel a forged will which had not been probated, still in the hands of those implicated in its forgery, and having done nothing to estop him from asserting his rights, he would be held to have waived or affirmed the forgery; and, further, that under such circumstances, unless he should give full and particular reasons for not bringing an action within a limited time in his bill, he would have no standing in a court of equity. The bare statement of such propositions ought to be their own refutation. But, if it should be granted that the position as to laches of appellant is correct, still, in this case, considering the position that this action could not be maintained until the will was probated, there is no room for the doctrine of laches in the case. The suit was actually commenced before the will was probated or the deed recorded.

There appears to have been some complaint as to the evidence of experts giving evidence from a comparison of handwritings. This is permitted by section 765 of Hill's Annotated Laws of Oregon, and the case of Connecticut Mut. Life Ins. Co. v. Union Trust Co., 112

U. S. 250, 5 Sup. Ct. 119, sets the matter at rest, as far as this court is concerned, in favor of the admission of such evidence. We have found as a fact that both the deed and will were never executed by Philinda Terwilliger, and are forgeries. We have reached this conclusion from a comparison of the acknowledged handwriting of said Philinda Terwilliger with that exhibited in the signatures of said instruments. We have been guided in reaching this conclusion by our own inspection, guided somewhat by the evidence of the experts in the case. There are quite a number of circumstances, independent of this comparison of handwritings, which lead to the same conclusion. Julia Terwilliger Richardson, on March 21, 1875, wrote her brother, William O. Green, a letter. To this letter James Terwilliger added a note, in which he stated, among other things, as follows: "If there is anything more that can be done for you, it shall be done, as your mother deeded all her property here to Julia after her and my death." This corresponding with the language in the deed, there can be no doubt but this note was written by him. Why did he then fail to state anything about the will, if there was one? The will bears date the day Calvin Green, one of her sons, was killed in Eureka, Nev. He is not named in the will, but her other son is. It is evident that the naming of this son in the will was with the view of preventing him from contesting the will under the laws of Oregon. Waterman, who swears he wrote the will, testifies that Philinda Terwilliger knew it was necessary to mention her sons in the will, or, under the laws of Oregon, they would come in for their share in the estate as though no will had been executed. Is it probable that, remembering one son, she should forget the other under such circumstances? Is it not more probable that the one who wrote this will knew at the time there was but one son living, and did not recall, or did not know, that Philinda Terwilliger could not have known of the death of the other, at the date given to the will? Then there is the important circumstance that the will and deed were kept for near 16 years without giving any publicity thereto. No record was made of them. It does not seem reasonable that James Terwilliger would have kept the will in his possession for near 16 years without taking legal advice concerning the same, and having it probated, if he felt that it was genuine. His evidence upon the subject of keeping this will as he did, and not communicating the fact to his daughter, is not satisfactory. The daughter, Julia, testifies that she did not know of this will until in 1881, some eight years after her mother died, when she was told of it by her uncle, John Terwilliger. James Terwilliger says he found this will, after the death of his wife, among her papers and "knickknacks." He does not say he knew of this will before this time. Taking human beings as we find them, we feel sure that any man of ordinary intelligence would have made known the fact of finding this will as he swears he did. Any one called upon to weigh human testimony must judge of its probability in connection with his knowledge of human nature, and the probable conduct of any human being under a given state of circumstances. We should say that it would be the natural act of

any reasonable person finding so important an instrument, under such circumstances, to make it known to those interested. But he, according to his own testimony, said nothing to any one. When he wrote to William O. Green, some two years after his mother's death, he says nothing about it, under circumstances that would have induced a declaration on the subject, for in that letter he mentions the deed. The reasons it is said Philinda Terwilliger gave for disinheriting her sons are not satisfactory. "She said that her sons had had their time to make money, and that, therefore, she would give them nothing." Again, it is said that she urged that they had got all the property got by her first husband, Green. We do not know what the law of Oregon was, at the time she reached there, upon the right of the wife in the personal property of her husband; at common law, upon a distribution of the same, she would have been entitled to only one-third thereof. 2 Bl. Comm. 515. Green had been drowned in the Indian country, in what is now part of the state of Idaho. The value of this property was not much, at all events. Then it is claimed that all the estate of Calvin Green was given to William O. Green. This proves to be untrue. It further appears that the estate of Calvin Green was of no value to his brother William. These matters exhibit that James Terwilliger, his daughter, and friends were seeking for some motive for the unnatural act of a mother disinheriting her sons. For a mother to do this should require some strong motive, when we consider the unfaltering love of a mother for her offspring. Philinda Terwilliger was no exception, as we view the evidence, in this regard, among mothers. The motives assigned for this act seem not to be based upon facts, and are illusory. It would seem that Waterman wrote the will, and yet he does not remember that there was an erasure in the signature of Philinda Terwilliger. He remembers many minute circumstances, according to his evidence, in regard to writing the will, but nothing as to this fact. It looks somewhat as though this was a fact he would prefer not to have investigated. One would think, when his mind was called to so important a fact, he would have remembered it. After this will was made there is no doubt there was some talk about it; not open talk, but information given secretly of the fact that such an instrument existed. This would be the natural conduct of human beings, under the circumstances, considering that the will was forged. Julia hears of it first from her uncle, John, in 1881, eight years after her mother's death, and not from her father. It is singular, after having received this information, she says nothing to her father upon the subject, or he to her. Yet when Mary F. Green came to the house about this time she speaks to her father, requesting that he exhibit the will and deed to Mrs. Green, as though familiar with the fact that he possessed the instruments, and he was aware that she knew he possessed them. In some points the evidence of Julia and her father does not fully agree. In considering the evidence of the witnesses who are relatives of Julia Terwilliger, we find it quite manifest that they thought it perfectly just that her mother, Philinda, should give her all the property she had become possessed of after

her marriage with James Terwilliger. They seem in some way to have been impressed with the idea that this property had been acquired by the joint action of the father and mother. The truth is, however, that this 150 acres of land was a gift of the United States to Philinda Terwilliger as a reward for her becoming a pioneer in the settlement of its distant possessions, and that the means which enabled her to reach Oregon she derived from her first husband, Green. We find, therefore, that the opinion that the will is a forgery, judging from the handwriting, is corroborated by many circumstances bearing upon the question. When we consider that the deed is defective, we find a motive for the forging of the will; and when we find that the will is a forgery, we feel that interested parties were willing to commit any forgeries in order to vest the title to this real estate in Julia Terwilliger. Judging from the handwriting in the signature to the deed, we feel confident Philinda Terwilliger never wrote it.

The evidence in this case was so fully and ably discussed by Judge Hawley, presiding upon the trial of the cause in the district of Oregon, we cannot hope to say more than he has upon the facts in the case which led him to the conclusion that both deed and will were forgeries. 56 Fed. 384. We concur fully in his views upon this point, and hence feel that it is unnecessary to more fully present them ourselves.

It is ordered that the judgment of the circuit court be, and the same is hereby, affirmed, with costs.

McKENNA, Circuit Judge. I concur in the reasoning and conclusion of my associate as to the deed and will, and think both are forgeries. I believe, also, that the authorities cited by him establish that courts of equity, by virtue of their general authority to enforce equitable rights and remedies, have no power to avoid a will, or to set aside its probate on the ground of fraud, mistake, or forgery; this being within the exclusive jurisdiction of courts of probate. But where such a remedy is given to a state court by an action inter partes, the remedy may be adopted by the federal courts if the controversy is between citizens of different states. By the constitution of Oregon (article 7, § 12) and by its statutes (Hill's Ann. Laws, § 895) the county court has exclusive jurisdiction in the first instance of the probate of wills. The probate is in the common form, but the judgment is conclusive until set aside on appeal or impeached by direct proceedings (Jones v. Dove, 6 Or. 188; Hubbard v. Hubbard, 7 Or. 44); and all acts done under it in the course of administration are valid (Brown v. Brown, Id. 285). A suit, however, may be maintained in the county court to declare the will void, and revoke its probate. Clark's Heirs v. Ellis, 9 Or. 132, and cases supra. The nature of this suit is not precisely defined by the decisions, but it is certainly inter partes, and seems to be within the doctrine declared in Ellis v. Davis, 109 U. S. 496, 497, 3 Sup. Ct. 327. This remedy existing in the Oregon courts, it could be exercised by the United States circuit court, but preliminary probate of the will was essential to it. Ellis v. Davis,

109 U. S. 497, 3 Sup. Ct. 327. This probate had not been made when the suit at bar was brought. It therefore follows no cause of action existed to cancel the will. The defendant demurred to this ground of relief. The cause of demurrer stated was "that the said matter is within the jurisdiction pertaining to courts of probate, and is not within the jurisdiction of this court, and does not contain sufficient matter of equity whereupon the court can ground any decree in favor of said complainants, or give complainants any relief against these defendants." This is not very clear, but, interpreting it by the brief of appellants' counsel, the point was not intended to be made that the United States circuit court had no jurisdiction because there had been no preliminary probate, but that the relief sought was essentially a matter of probate, and resided exclusively in the state court having probate jurisdiction. The demurrer was overruled, the court filing no opinion. On the 27th of March, 1889,—23 days after the bill was filed,—the will was probated in the first instance in the proper county court of Oregon, and this fact alleged in a plea in abatement, and that it was established as the last will and testament of Philinda Terwilliger and that the decree of the court had not been reversed or appealed from. The plea was held insufficient. Its allegations were substantially repeated in the answer which was filed at the same time as the plea. It will be observed that the plea and the answer repeating it were based on the same ground as the demurrer,—that a court of equity had no jurisdiction. The answer, however, brought into the pleadings the necessary condition of the maintenance of the suit, and on this fact, with the others proved, I think it was competent to the court to give relief. It was sufficient if the court had jurisdiction at the time the decree was entered. Railroad Co. v. Ketchum, 101 U. S. 298. The decree, however, should be modified. It follows the prayer of the bill, and not the case as made. It should have adjudged the will invalid, and the revocation of its probate in accordance with the relief given in the Oregon courts.