WAHL v. FRANZ.

(Circuit Court of Appeals, Eighth Circuit. March 12, 1900.)

No. 1,293.

1. REMOVAL OF CAUSES—NATURE OF SUIT—PROCEEDING FOR PROBATE OF WILL.
A proceeding for the probate of a will is not a "suit of a civil nature at law or in equity," within the meaning of the first and second sections of the judiciary act of 1888, which is cognizable in the first instance by a circuit court of the United States, or removable thereto from a state court.[1]

2. SAME—CONTEST OF WILL.
A proceeding for the probate of a will was instituted by the sole devisee therein in a probate court of Arkansas, where the validity of the will was contested by the sole heir at law of the testator. From a judgment sustaining the validity of the will and admitting it to probate the contestant appealed to the state circuit court. Under the constitution and statutes of the state, a circuit court has no jurisdiction to hear and determine a contest of a will except on an appeal from a probate court, in which case the matter shall be tried therein de novo. Held, that the proceeding in that court on appeal was not a "suit of a civil nature at law or in equity," within the meaning of the federal judiciary act of 1888, and was not removable by the contestant, who was a citizen of another state, to the circuit court of the United States, on the ground of local prejudice.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

On the 9th day of December, 1895, Joseph Molen died at Hot Springs, Ark. On the 24th day of the same month Adele Wahl presented to the clerk of Garland county, Ark., a paper purporting to be the last will and testament of Joseph H. Molen, by the terms of which she became the sole devisee, after the payment of the debts and funeral charges. This will was proven before the clerk of the probate court, in vacation, and a certificate of probate granted to her, subject to the confirmation or rejection of the court, as provided by section 7422, Sand. & H. Dig. St. Ark. On the same day that the will was presented, Adele Wahl filed her petition in the probate court of Garland county, in which she stated the death of the deceased, the existence of a will, its probate before the clerk in vacation, and that no executor was provided for in the will, and that she was the sole devisee. She also alleged that no administrator had been appointed, and prayed the court for letters of administration with the will annexed. On the 28th day of the same month Mary E. Franz filed her petition in the probate court of Garland county, Ark., in which she set forth, among many other things, that she was a sister of Joseph H. Molen, and his sole heir at law, and denied that the instrument propounded by the said Adele Wahl was the last will and testament of the deceased, Joseph H. Molen. She alleged, also, that the said Joseph H. Molen was, at the time he signed the said pretended will, under the undue influence of the said

[1] As to probate jurisdiction of federal courts, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.

Adele Wahl, whereby he was deprived of his volition, and for this, among other reasons, prayed that the will be set aside and rejected. On the 8th day of January Adele Wahl responded to this petition, denying the material allegations contained therein. The probate court, after hearing the testimony, confirmed the action of the clerk in vacation, and admitted the will to record, adjudging it to be the last will and testament of the said Joseph H. Molen, deceased. From this judgment of the court probating the will the said Mary E. Franz, in due form and in apt time, took an appeal to the circuit court of Garland county, Ark., as provided by the statutes of that state. While the cause was pending on appeal in said court, to wit, on the 12th day of May, 1897, Mary E. Franz filed her petition and bond in the circuit court of the United States for the Western division of the Eastern district of Arkansas to remove the cause into said court on the ground of local prejudice, alleging that by reason thereof she could not obtain justice in the circuit court of Garland county, or in any other state court to which, under the laws of the state of Arkansas, the cause might be removed. In her petition she avers that the suit or controversy is of a civil nature, involving more than $2,000, exclusive of interest and costs, and is wholly between citizens of different states, and which can be fully determined as to them, to wit, a controversy between the said Mary E. Franz, who avers that at the time of the commencement of this proceeding she was, and still is, a resident of the state of Ohio, and that said Adele Wahl, proponent of said will, was then, and still is, a citizen of the state of Arkansas. She alleges that the said Adele Wahl is not legally entitled to inherit from the said deceased, but is the sole devisee in said will; and also that she (Mary E. Franz) is the sister and sole heir at law of the said deceased, who died without issue. She also sets up the proceedings had in the probate court of Garland county, her appeal therefrom to the circuit court, where the same was then pending, and that no order of court had been made directing an issue of devisavit vel non to be submitted to a jury, and that the said Adele Wahl and herself are actually interested in said controversy. Adele Wahl appeared in said United States circuit court, and filed a response to the petition for removal. After hearing the same, the court adjudged that the cause was removable, and that the statute regulating removals had been complied with, and retained jurisdiction of the cause. A jury was called, and the case was tried upon its merits. The jury returned a verdict finding the issues for the contestant, and that the will was executed under undue influence, and thereupon a judgment was rendered that the instrument of writing was not the last will and testament of Joseph H. Molen; that the application to admit it to probate as such be denied, the judgment of the probate court of Garland county admitting it to probate be set aside and annulled, and that the contestant recover of the proponent all her costs in that behalf expended, and that a copy of the judgment be certified to the probate court of Garland county for action in pursuance thereof. Motions for a new trial and arrest of judgment were filed and overruled. A bill of exceptions was tendered in apt time, duly signed, a writ of error sued out, and the case is now before this court for review. Any other facts that may be necessary for the determination of this case will appear in the opinion.

J. B. Wood and J. P. Henderson, for plaintiff in error.

G. B. Rose (U. M. Rose, W. E. Hemingway, and J. M. Harrell, on the brief), for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and ROGERS, District Judge.

ROGERS, District Judge, after stating the case as above, delivered the opinion of the court.

In Railroad Co. v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672, it was distinctly held that under section 2 of the act of March 3, 1887, as corrected by the act of August 13, 1888 (25 Stat. 433), the jurisdiction of a United States circuit court, on removal

by the defendant from a state court, is limited to such suits as might have been originally brought in the United States circuit court by the plaintiff under the first section of that act. All the courts have followed that decision, which is now the settled law. It is also decided in the same case that "the question is a question of jurisdiction, as such, and cannot be waived;" citing Capron v. Van Noorden, 2 Cranch, 126, 2 L. Ed. 229; Railway Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543. The 'question, therefore, which arises on the very threshold of this case is, was it removable from the Garland circuit court to the United States circuit court for the Western division of the Eastern district of Arkansas? The decision of that question turns upon the construction to be placed upon sections 1 and 2 of the corrected act of August 13, 1888 (25 Stat. 433). The portions of those sections of that act defining the jurisdiction of district and circuit courts of the United States which bear on the question involved are as follows:

"Section 1. That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be a controversy between citizens of different states," etc.

"Sec. 2. That any suit of a civil nature, at law or in equity, arising under the constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought, in any state court, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper district. Any other suits of a civil nature, at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought, in any state court, may be removed into the circuit courts of the United States of the proper district, by the defendant or the defendants therein, being non residents of that state. * * * And where a suit is now pending, or may be hereafter brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to said circuit court that from prejudice or local influence he will not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the state, have 'the right, on the ground of such prejudice or local influence, to remove said cause."

By reading section 1 of the act it will be seen that to confer jurisdiction on a circuit court of the United States three things are necessary, and no others: (1) A suit of a civil nature at common law or in equity. (2) It must involve $2,000, exclusive of interest and costs. (3) It must arise between citizens of different states, or present one or the other conditions mentioned in the last part of section 1, which part of said section is not quoted, because not involved in the question under consideration. If the three things abovementioned concur in a case, no methods of procedure prescribed by a state for its own courts can deprive circuit courts of the

United States of original jurisdiction thereof. Railway Co. v. Jones (C. C.) 29 Fed. 193; In re Jarnecke Ditch (C. C.) 69 Fed. 161; Hyde v. Stone, 20 How. 170–175, 15 L. Ed. 874; Ellis v. Davis, 109 U. S. 497, 498, 3 Sup. Ct. 327, 27 L. Ed. 1006; Cowles v. Mercer Co., 7 Wall. 118. 19 L. Ed. 86; Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Railroad Co. v. Whitton's Adm'r, 13 Wall. 270, 20 L. Ed. 571. Bearing in mind that the right to remove a case from a state to the federal court depends upon whether the suit might have been originally brought in the federal court, we have concluded that the question of removal in this case is narrowed down to this one proposition: Is the probate of a will "a suit of a civil nature at common law or in equity"? The decisions are in direct conflict, and I have found no decision on the precise question which is binding upon this court. Primarily, that the enactment of the act of August 13, 1888, was to restrict the jurisdiction of the circuit courts of the United States, has been repeatedly decided, and is now settled. Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635; In re Pennsylvania Co., 137 U. S. 451, 11 Sup. Ct. 141, 34 L. Ed. 738; Fisk v. Henarie, 142 U. S. 459, 12 Sup. Ct. 207, 35 L. Ed. 1080; Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; Hanrick v. Hanrick, 153 U. S. 192, 14 Sup. Ct. 835, 38 L. Ed. 685; Railroad Co. v. Davidson, 157 U. S. 208. 15 Sup. Ct. 563, 39 L. Ed. 672. So far as we know, original jurisdiction to probate, or reject the probate, of a will was never entertained by any court of the United States under the original judiciary act or the act of 1875. It might well be inquired if to recognize jurisdiction under the act of 1888 is consistent with the universally recognized and established purpose for which that act was enacted. But there is also a radical difference between the provisions of both the original judiciary act and the act of 1875 and that of 1888 in relation to removal of cases from state courts. Under the original act, as well as that of 1875, the removal was not made to depend on the question as to whether the circuit court had original jurisdiction of the suit (Railroad Co. v. Davidson, 157 U. S. 208, 15 Sup. Ct. 563, 39 L. Ed. 672); but, as we have seen, under the act of 1888 a case cannot be removed to the circuit court unless it might have been originally brought there. If, therefore, we treat the discussion of Mr. Justice Matthews in the case of Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006, as indicating the tendency of the mind of the court as recognizing the right of a circuit court to take jurisdiction of the probate of a will under certain conditions specified (which is not conceded, but is denied), it must be remembered that the act of 1875 was then in force, under which, as already shown, the right of removal was not made to depend upon the existence of the right to bring the suit originally in the circuit court, as is the case now. That case should be read keeping in view the nature of the action and the issues decided. That case was heard on appeal from a decree dismissing the bill upon demurrer. Two things were sought by the bill: First. An accounting for rents and profits to realty which formerly belonged to defendant's testatrix. To secure this relief, a decree was sought adjudging the will, under which defendant held

as sole devisee, to be null and void for incapacity to make it. Second. A decree for possession of realty held by the defendant as sole devisee under the will. The will sought to be annulled had been probated, and the administration closed. The court denied the right to recover the possession of the lands because the plaintiff's remedy at law was adequate. An accounting was denied, because, when ejectment was brought for the land, the court would direct an accounting as an incident in the cause. The court then proceeded to discuss the facts in the bill to see if they excepted the case from the principles stated. It is clear the object of this bill was primarily not to probate or vacate a will. It was to recover the real estate and rents and profits. In order to do this, the will stood in the way, and hence it was insisted that jurisdiction should be entertained for the purpose of canceling the will. The jurisdiction was denied. The court said:

"It is well settled that no jurisdiction belongs to the circuit courts of the United States as courts of equity, for courts of equity, as such, by virtue of their general authority to enforce equitable rights and remedies, do not administer relief in such cases. The question in this aspect was thoroughly considered and finally settled by the decision of this court in the case of In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599."

Later, in the same opinion, in a somewhat historical discussion of the question, very, elaborate, but not very satisfactory, this doubting passage occurs:

"And where provision is made by the laws of a state, as is the case in many, for trying the question of the validity of a will, or attempting to probate by a litigation between the parties, in which that is the sole question, with the effect, if the judgment shall be in the negative, of rendering the probate void for all purposes as between the parties and those in privity with them, *it may be* that the courts of the United States have jurisdiction, under existing provisions of law, to administer the remedy and establish the right in a case where the controversy is wholly between citizens of different states." (Italics ours.)

And later, in the same opinion, the court said:

"Jurisdiction as to wills, and their probate as such, is neither included in nor excepted out of the grant of judicial power to the courts of the United States. So far as it is ex parte, and merely administrative, it is not conferred, and it cannot be exercised by them at all until, in a case at law or in equity, its exercise becomes necessary to settle a controversy of which the courts of the United States may take cognizance by reason of the citizenship of the parties."

This case is direct authority against the jurisdiction in cases like the one at bar, although the case is urged by learned counsel as establishing the contrary. The court then quotes approvingly from Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524. In this connection it is important to examine briefly the nature of that case, and the precise points decided, for upon Ellis v. Davis and Gaines v. Fuentes, as we shall see later, is made to rest the decision of Judge Pardee in Brodhead v. Shoemaker (C. C.) 44 Fed. 518, 11 L. R. A. 567; and, if those cases do not support his decision in that case, then it is without any support other than the high standing of the judges delivering it. Gaines v. Fuentes is this sort of a case: Mrs. Gaines, the plaintiff in error, and the defendant in the court below, had probated in the Second district court for the parish of Orleans the will of Daniel Clark; that court being vested with ju-

risdiction over the estates of deceased persons and appointments necessary in the course of their administration. She afterwards brought several suits against the defendants in error to recover certain lands and properties, relying on the will as a muniment of title as "instituted heir" of Daniel Clark. Thereupon the defendants in error filed their original petition in the same court, alleging they were unable to contest the will until the decree of probate thereof was recalled, and stating as grounds for recalling it the falsity and insufficiency of the testimony upon which it was probated, and the status of the plaintiff in error incapacitating her to inherit under the will. Upon service being made upon the plaintiff in error, she applied, in proper form, with a tender of the necessary bond, for removal of the cause to the circuit court of the United States for the district of Louisiana, under the twelfth section of the judiciary act of 1789, on the ground of citizenship, and her application was denied. She then applied for a removal of the action under the act of March, 1867, on the ground of prejudice and local influence, and this application was also denied. Upon a hearing in the state court the will was annulled, and the case taken to the supreme court of the state of Louisiana, and from there, by writ of error, taken to the supreme court of the United States, which court reversed the case for error in the parish court in not removing the case to the United States circuit court for the district of Louisiana. The court in that case say:

"The action is in form to annul an alleged will of 1813 of Daniel Clark, and to recall the decree by which it was probated; but, as the petitioners are not heirs of Clark, or legatees, or next of kin, and do not ask to be substituted in place of the plaintiff in error, *the action cannot be treated as properly instituted for the revocation of the probate*, but must be treated as brought against the devisee *by strangers to the estate to annul the will as a muniment of title*, and to restrain the enforcement of the decree by which its validity was established, *so far as it affects their property*. It is, in fact, an action between parties, and the question for determination is whether the federal court can take jurisdiction of an action brought for the object mentioned, between citizens of different states, upon its removal from a state court."

The court then says:

"The suit in the parish court *is not a proceeding to establish a will, but to annul it as a muniment of title, and to limit* the operation of the decree admitting it to probate. It is, in all essential particulars, a suit for equitable relief,—to cancel an instrument alleged to be void, and to restrain the enforcement of a decree alleged to have been obtained upon false and insufficient testimony. There are no separate equity courts in Louisiana, and suits for special relief of the nature here sought are not there designated suits in equity. But they are none the less essentially such suits; and if, by the law obtaining in that state, customary or statutory, they can be maintained in a state court, whatever designation that court may bear, we think they may be maintained by original process in a federal court, where the parties are, on the one side, citizens of Louisiana, and on the other citizens of other states. * * * In the case of In re Broderick's Will the doctrine is approved, which is established in both England and this country, that by the general jurisdiction of courts of equity independent of statutes, a bill will not lie to set aside a will or its probate; and, whatever the cause of the establishment of this doctrine originally, there is ample reason for its maintenance in this country, from the full jurisdiction over the subject of wills vested in the probate courts, and the revisory power over their adjudications in the appellate courts. But that such jurisdiction may be vested in the state courts of equity by statute is there

recognized, and that, when so vested, the federal courts, sitting in the states where such statutes exist, will also entertain concurrent jurisdiction in a case between proper parties. There are, it is true, in several decisions of this court, expressions of opinion that the federal courts have no probate jurisdiction, referring particularly to the establishment of wills; and such is undoubtedly the case under the existing legislation of congress." (Italics ours.)

The two cases of Ellis v. Davis and Gaines v. Fuentes thus appear to rest precisely on the same ground,—one being a suit to recover lands and the rents and profits thereof, and praying the court to cancel a will in order that it might be done; and the other being a direct proceeding by a stranger, under the statutes of the state, to cancel a will already probated in order to defend the title to real estate held by the moving party. The question presented by the case at bar is totally different. The will is presented by the sole devisee for probate only. It is resisted by the sole heir at law. A judgment was rendered in the probate court probating the will, and from that judgment an appeal has been taken, and the same question is presented de novo in the circuit court. It is purely and simply a contest over the probate of the will, and not a mere incident —important, it may be—to the successful prosecution of another suit for relief of a wholly different character.

The defendant in error, to sustain the jurisdiction of the federal court, has cited the decision of Brodhead v. Shoemaker (C. C.) 44 Fed. 518, 11 L. R. A. 567. That case was heard in the circuit court for the Northern district of Georgia, Judges Pardee and Newman presiding, the opinion being delivered by the former. It must be conceded that this decision is in point, and sustains the jurisdiction contended for in this case. Judge Pardee does not discuss the question at all. He simply says:

"From the statutes cited, and the record of the case as made, up to the time of removal, it appears perfectly clear that the proceeding pending in the superior court of Floyd county, Ga., taken in connection with the removal statutes of the United States, was a suit in which there was a controversy removable by the defendants to the circuit court of the United States for the Northern district of Georgia upon compliance with the conditions prescribed in said removal statutes; and it is within the rule laid down by the supreme court in the cases of Gaines v. Fuentes, 92 U. S. 10, 23 L. Ed. 524; Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006. See, also, Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Hess v. Reynolds, 113 U. S. 75, 5 Sup. Ct. 377, 28 L. Ed. 927; Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; Mr. Justice Bradley's dissenting opinion in Rosenbaum v. Bauer, 120 U. S. 461, 7 Sup. Ct. 633, 30 L. Ed. 743."

We cannot assent to the conclusions reached by Judge Pardee. In the view we have taken, the case of Brodhead v. Shoemaker, supra, is not supported by Gaines v. Fuentes or Ellis v. Davis; and the other cases cited by Judge Pardee, in our opinion, have no relevancy or bearing whatever upon the real question at issue, namely, "whether the probate of a will is a suit of a civil nature at common law or in equity," within the meaning of the act of 1888. We are of the opinion that Judge Pardee totally misapprehended the question decided in Ellis v. Davis, and Gaines v. Fuentes, being led astray by expressions of the court which had no direct bearing upon the precise questions at issue. We prefer the reasoning found in Re

Cilley (C. C.) 58 Fed. 977, decided by District Judge Aldrich, and concurred in by Circuit Judge Colt, in the circuit court for the district of New Hampshire. This opinion is directly in conflict with the opinion in Brodhead v. Shoemaker, and arose in states where the statutes for probating wills are substantially the same. The opinion in the case of In re Cilley, supra, shows exhaustive research, and was delivered after a reargument of that case. In Ellis v. Davis the supreme court reaffirmed, what had frequently been decided before, that the terms "law" and "equity," as used in the constitution, were intended to mark and fix a distinction between the two systems of jurisprudence as known and practiced at the time of its adoption. It will not be seriously contended that the same terms used in the original judiciary act were not intended by congress to have the same meaning, and the same is true of the acts of 1875 and 1888. In view of these decisions, it seems natural that the learned judge, in his able discussion of this question in the case of In re Cilley, supra, should have begun with the inquiry as to what was meant by "suits of a civil nature at law or in equity" when the constitution was adopted; or, to state it in another form, to ascertain whether those words, as then and previously understood in England and America, embraced the proceedings for the probate of wills. He demonstrates, by decisions in England and America (if anything can be demonstrated), that such was not the case in this country or in England, either at the time the constitution was adopted or prior thereto, and that the terms used in the judiciary act, like those used in the constitution, were not used in any local sense, but "in the broad common-law sense in which equity and common-law jurisdiction are understood in this country and in England." The opinion, in this regard, is both instructive and strong, and it seems to us conclusive; so much so that little can be added thereto. After citing various decisions of the supreme court of the United States and of the circuit courts (In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Tarver v. Tarver, 9 Pet. 174, 9 L. Ed. 91; Fouvergne v. City of New Orleans, 18 How. 470, 15 L. Ed. 399; Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006; Ball v. Tompkins [C. C.] 41 Fed. 486; Reed v. Reed [C. C.] 31 Fed. 49; In re Aspinwall's Estate [C. C.] 83 Fed. 851; In re Frazer. Fed. Cas. No. 5,068; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054) in which the jurisdiction now asserted was disclaimed, he cites numerous decisions of the state courts to show that proceedings to establish wills are not commonly classed and known as suits at common law or in equity, and were not so classed or known in the early history of this country, and, therefore, were not suits removable to the federal courts. He distinguishes cases like that at bar from such cases as Ellis v. Davis, Hess v. Reynolds, Gaines v. Fuentes, and that class of cases of which Boom Co. v. Patterson is a sample, and pertinently suggests that when congress intends to make so radical a change as to confer jurisdiction of the probate of wills on the federal courts—a jurisdiction disclaimed by the courts from the foundation of the government, and a jurisdiction always exercised in England by the ecclesiastical

courts, and in this country by probate courts created for that and kindred special purposes—it will not be left to doubtful construction, but will be provided for by definite and unmistakable language. The argument of the learned judge is well-nigh complete and conclusive, the authorities convincing, and we are content with the result reached in that case. It is precisely in point, and it is absolutely irreconcilable with Brodhead v. Shoemaker, which, in our opinion, is not only unsound, but is not supported by either authority or reasoning, nor does it give evidence of careful consideration or research. It could serve no wise purpose now to quote from the opinion in the case of In re Cilley, supra. In Copeland v. Bruning (C. C.) 72 Fed. 5, District Judge Baker, for the district of Indiana, in a very clear and well-considered opinion rendered in 1896, reviewing many cases, follows In re Cilley, supra. That case is important in this: that in Indiana the probate of a will is had in the circuit court,—a court of general jurisdiction. Under the statute of that state, William H. Bruning presented for probate, in the office of the clerk of the circuit court of Jefferson county, Ind., the alleged last will and testament of John F. Bruning. Clara Copeland, a child of the deceased, under the statute of the state, filed her objections to the probate of the will. Subsequently, under a statute of that state, she filed a complaint to contest the validity of her father's will, making William H. Bruning, one of the children and heirs at law of the decedent, and a devisee under the will, party defendant. Service was had upon the defendant. Thereupon he tendered a petition, accompanied by a proper bond, for the removal of the cause into the federal court. The state court refused to make the order of removal. He then filed a transcript of the record in the federal court, and the plaintiff, Clara Copeland, filed her motion to remand the same. The question now at bar was, therefore, squarely presented in that case. The learned judge in that case reviewed almost every case cited in this opinion, and, after the most careful consideration, remanded the case to the state court. In Oakley v. Taylor (C. C.) 64 Fed. 245, District Judge Priest, of the Eastern district of Missouri, in a strong and well-considered opinion, reached the same conclusion; and this case is also important because of the statutes of that state regulating the probate of wills. The case is directly in point, and justly entitled to much weight. In Everhart v. Everhart (C. C.) 34 Fed. 85, District Judge Hill, of the Southern district of Mississippi (though retaining jurisdiction of that case), recognized the same rule, and in that case, as in almost every case cited, Gaines v. Fuentes and Ellis v. Davis are cited to support the doctrine announced in that case, thus evidencing the well-nigh unanimous interpretation placed by the courts upon those cases. In Langdon v. Goddard, 2 Story, 267, 14 Fed. Cas. 1101 (No. 8,060), decided by Mr. Justice Story at circuit (district of New Hampshire), that learned justice said:

"In respect to the wills and the codicils admitted to probate, the exclusive jurisdiction of the probate thereof belongs to the state courts of probate, and we have no authority whatsoever to inquire into it, or examine the validity thereof."

And the reporter of the Federal Cases cites, in a footnote to this opinion, the following cases: Armstrong v. Lear, 12 Wheat. 169, 6 L. Ed. 589; Rex v. Inhabitants of Neatherseal, 4 Term R. 258; Price v. Dewhurst, 4 Mylne & C. 76, 80; Tompkins v. Tompkins, 24 Fed. Cas. 40 (No. 14,091). It may be added that it is remarkable, indeed, that if the jurisdiction of a suit, the object and purpose of which is to settle nothing but the validity or invalidity of a will as a preliminary step in determining whether its probate should be granted or denied, was so doubtful that it was never entertained by a federal court, so far as we have been able to ascertain, prior to the decision of Brodhead v. Shoemaker, that it should now be entertained under the act of 1888, which act was confessedly enacted for the specific purpose of curtailing the jurisdiction of the United States courts. (On the general question of the jurisdiction of federal courts over the administration of estates of deceased persons, see notes to Barling v. Bank, 1 C. C. A. 510, 513 [s. c. 50 Fed. 260], and Quarries Co. v. Tomlinson, 36 C. C. A. 272 [s. c. 95 Fed. 208].)

It must be remembered that the question is not whether congress has the power, under the constitution, to confer that jurisdiction upon the federal courts. The question is, has it done so? And the action of the courts from the foundation of the government down to the passage of the act of 1888 should be accepted as an absolute denial thereof, and, unless it can be shown that by the act of 1888 the jurisdiction in respect of the subject-matter under consideration was enlarged, the courts should await future action upon the part of congress before assuming jurisdiction of this new and novel class of cases hitherto confided, in England, to the ecclesiastical courts, and in this country to statutory courts adapted especially for their hearing.

The law of Arkansas, and the jurisdiction of its courts, touching the probate of wills, have been settled by its own supreme court. In Baptist College v. Scott, 64 Ark. 350, 42 S. W. 537, the supreme court said:

"It has been held by this court that a court of equity has no jurisdiction to hear and determine a contest of a will. Mitchell v. Rogers, 40 Ark. 91. It has also been held by this court that such a contest cannot be made by proceedings on a writ of certiorari, but that the only remedy is by appeal. Petty v. Ducker, 51 Ark. 281, 11 S. W. 2. It has also been determined by this court that the circuit court has no original jurisdiction now, as formerly, to try such a contest, since the constitution confers original and exclusive jurisdiction of wills, etc., upon the probate courts. Dowell v. Tucker, 46 Ark. 451. It follows that such a contest, if made at all, must be made originally in the probate court, or else, when that cannot be done, on appeal from the probate order of the probate court to the circuit court, accordingly as the will has been probated in the more solemn form or in the common form."

And it is expressly provided by statute that the trial in the circuit court shall be de novo. Sand. & H. Dig. § 1152. It is not, therefore, an original proceeding instituted in the circuit court, but it is a continuation of the proceedings begun in the probate court. It is not a suit at law, nor is it a suit in equity, as understood either at common law or in equity, nor as recognized by the statutes and laws of the state. In its origin a proceeding to probate a will in

100 F.—44

the probate court, if the probate is sought in common form,—that is, without notice to parties interested,—it partakes very little of either. No complaint is filed, no pleadings are required, and no service had. It is in the nature of a proceeding in rem. If the probate is sought in the more solemn form (that is, after notice had to parties interested,—which may be done either in the probate court or on appeal in the circuit court), the proceeding is the same in both, with one exception. In the probate court there can be no jury impaneled; in the circuit court there may be, upon the demand of any one of the parties interested. The real contest of the will, in that event, may be made, as said in Baptist College v. Scott, supra, on the grounds set forth in the petition of the parties contesting the will, which, of course, will necessarily show the relationship of the parties to the deceased. The statute only provides that the case may be brought to the circuit court on appeal by simply filing the affidavit, and when in the circuit court, "upon the demand of any one of them, a jury shall be impaneled to try which or how much of any testamentary paper produced is or is not the last will of the testator." If no jury be demanded, the question is determined by the court, and the final decision is a bar to any other proceeding to call the probate or rejection of the will in question, subject to the right of appeal or writ of error to the supreme court as provided by the statute; but it is provided that nothing contained in the statute shall preclude a court of chancery from its jurisdiction to impeach such final decision for such reason as would give it jurisdiction over any other judgment at law. Sand. & H. Dig. § 7421. The contention of the defendant in error is not, therefore, advanced by anything found in the statutes of Arkansas, or the decisions of its courts. The conclusion is that, within the meaning of the first and second sections of the judiciary act of 1888, the proceeding for the probate of a will is not a "suit of a civil nature at common law or in equity," and therefore is not removable either from the probate court or from the circuit court into the federal court. The judgment is reversed, with instructions to the circuit court of the United States for the Western division of the Eastern district of Arkansas to remand the case to the circuit court of Garland county.

SANBORN, Circuit Judge (dissenting). Let it be conceded: (1) That under the act of 1887, as corrected by the act of 1888, this case was not removable to the United States circuit court for the district of Arkansas unless at the time of its removal it was a suit of a civil nature at common law or in equity, within the meaning of that term as it had been interpreted by the supreme court of the United States prior to 1887; and (2) that the United States circuit court had no original cognizance of a proceeding to probate a will as such. The question here is not, however, whether or not the federal court has jurisdiction of a proceeding to probate a will. It is whether or not, after a will has been probated, and after a state has conferred upon its courts of law and its courts of equity jurisdiction to hear and determine in a suit between parties who

are citizens of different states, and who claim property in that state, the crucial issue which determines the right to that property, the issue whether or not a will so probated which devises the property was procured by fraud and undue influence, a federal court has concurrent jurisdiction of that suit. Let us refer to the statutes and the record for a moment, that the question at issue may be clear. The statutes of Arkansas as they are printed in Sandels & Hill's Digest, so far as they govern the proceedings in this case, provide that, when a will shall be exhibited for probate, the court of probate, or clerk thereof in vacation, shall receive the same, and grant a certificate of probate or of rejection, without summoning any party, but that this action shall be subject to the confirmation or rejection of the probate court (section 7422); that wills may be proved and admitted to record by the court of probate (section 1599); that they shall not be received in evidence until they have been allowed and admitted to record by the court of probate; that they shall be received in evidence thereafter; that the allowances of wills by the probate court shall be conclusive until the same shall be superseded or amended (sections 7408, 7410, 7411); that an appeal shall lie from the allowance of a will by the court of probate to the circuit court of the state (section 7409); that the circuit court of the state has jurisdiction of all actions for the enforcement of civil rights or the redress of civil wrongs except where exclusive jurisdiction is given to other courts; that its actions and proceedings are to be had according to the course, rules, and jurisdiction of the common law unless otherwise provided (section 1114); that it has a superintending control and appellate jurisdiction over probate courts; that its appellate jurisdiction extends to errors of fact as well as of law (sections 1120–1122); that on an appeal from the allowance of a will the circuit court shall proceed to try the case de novo (section 1152); that all necessary parties shall be brought before the court; that upon the demand of any one of them a jury shall be impaneled to try which or how much of any testamentary paper produced is or is not the last will of the testator; that its decision shall be a bar to any other proceeding to call the probate or rejection of the will in question except by appeal to the supreme court of the state (section 7421); and that any person who resides out of the state, who does not appear, and is not personally served with process, may, within three years after the final decision of the circuit court, impeach that decision, and have a retrial of the question devisavit vel non by an original suit upon a bill in chancery (section 7423). Thus it will be seen that, while the state of Arkansas has conferred upon its probate court jurisdiction to allow or reject a will in the first instance when it is properly presented to it, it has granted to its court of general jurisdiction—to its circuit court—the right and has imposed upon it the duty to try de novo, according to the course and practice at common law, in a suit instituted in that court by appeal from the probate court, every question of fact and of law involved in the issue, whether the probated writing is such a will or not, when the controversy has arisen over that issue between opposing parties, and that it has

conferred upon its court of chancery jurisdiction to hear and determine all these questions de novo in every case in which an interested nonresident has not appeared or been personally served with process in the suit in the circuit court. Such are the statutes. What is the case that was removed and tried in the court below? Was it an application to the probate court to allow or reject the will? Not at all. That application had been heard and granted, and the probate court had no further power over or jurisdiction of the issue. It was not a proceeding to establish the will that was removed to the court below. It was the suit between Mary Franz and Adele Wahl, instituted in the circuit court of the state by the appeal of the former from the probate court for the purpose of avoiding the will and its probate, and of trying de novo the issues of fact and of law presented by the pleadings which these two parties had interposed, and nothing more, that was removed to the federal court. When that removal took place, there were two parties, and two .only, to the suit and to the issues in controversy. The determination of those issues was decisive of the question whether Mary E. Franz, a citizen of Ohio, or Adele Wahl, a citizen of Arkansas, was the owner of all the property of which the decedent died seised, which was of the alleged value of $20,000. Mary E. Franz was his sole heir, Adele Wahl his sole devisee under the alleged will, and it was the suit between these parties to determine the issues upon which the title to this property depended that was removed into the court below. The course of the proceedings through which this removal was secured was thus: Joseph H. Molen died on December 9, 1895. On December 24, 1895, the clerk of the probate court admitted to probate, in common form, without notice to any one, his alleged will, which was propounded by Adele Wahl. On January 28, 1896, his sole heir, Mary E. Franz, filed in the probate court her petition, in which she averred that the writing presented was not the last will of Molen, that it had been revoked, that it was procured by undue influence, and that it had been falsely represented to be the will of Molen. These averments were denied by the devisee, and the question was presented and heard upon evidence in the probate court whether the certificate of allowance made by the clerk should be confirmed or rejected, and on June 10, 1896, the probate judge confirmed it. Thereupon Mary E. Franz appealed to the circuit court of the state, and thereafter, but before the trial of the case in that court, she removed it to the federal court on the ground of local prejudice. The case was tried by a jury in the United States circuit court, and they found that the pretended will was procured by undue influence, and was void, and the court rendered a judgment accordingly. Thus it appears that the question here is not whether the United States circuit court has original or other cognizance of a proceeding to probate a will. No application to prove such a will was presented to that court. No application to remove such a proceeding was made, and no such proceeding was removed. What was removed was the suit between Mary E. Franz and Adele Wahl, instituted in the circuit court of the state by appeal, which was to be tried in that court de novo, according to the

course and practice of the common law, which was to determine whether or not the writing challenged was procured by fraud and undue influence; and which, in determining that question, was to decide whether a citizen of Ohio or a citizen of Arkansas was the owner of $20,000 worth of property in that state.

The only question the case presents, therefore, is whether or not, when the state has conferred upon its courts of general jurisdiction at common law the right and power to hear and try de novo in a suit instituted by an appeal, and upon its courts of chancery the right to hear and try de novo in a suit commenced by original process, the question whether or not a writing that has been allowed as a will in the probate court of that state was procured by fraud and undue influence, a federal court sitting in that state has concurrent jurisdiction to hear and try that issue where the property in controversy is of the value of $20,000, and the parties to the suit are citizens of different states. This question has been answered in the affirmative by the supreme court in Gaines v. Fuentes, 92 U. S. 10, 20, 23 L. Ed. 524, Ellis v. Davis, 109 U. S. 485, 496, 497, 3 Sup. Ct. 327, 27 L. Ed. 1006, and Byers v. McAuley. 149 U. S. 608, 610, 620, 621, 13 Sup. Ct. 906, 37 L. Ed. 867; by the circuit court of appeals of the Ninth circuit in Richardson v. Green, 9 C. C. A. 565, 61 Fed. 423, 429, 435; by Judges Pardee and Newman in the circuit court in Brodhead v. Shoemaker, 44 Fed. 518, 11 L. R. A. 567; by Judge Hill in Everhart v. Everhart (C. C.) 34 Fed. 82, 85; and by Judge Williams in this case in Franz v. Wahl (D. C.) 81 Fed. 9; and in view of all the decisions upon the question the author of a leading text-book upon this subject has declared the rule to be that:

"While the probate of a will ex parte is in rem, and, not being between parties, cannot be removed to the federal court, yet where such will is contested in pursuance of statutory provisions, and becomes a suit inter partes residing in different states, the federal courts take jurisdiction as they would in any other controversy between parties." Woerner, Adm'n (2d Ed.) § 156, p. *357.

The question has been answered in the negative by Judges Colt and Aldrich in the circuit court of appeals of the First circuit, in Re Cilley (C. C.) 58 Fed. 977; by Judge Welker in Reed v. Reed (C. C.) 31 Fed. 49; by Judge Swayne in Re Frazer, Fed. Cas. No. 5,068; by Judge Baker in Copeland v. Bruning (C. C.) 72 Fed. 5; and by Judge Priest in Oakley v. Taylor (C. C.) 64 Fed. 245. The cases of In re Broderick's Will, 21 Wall. 503, 22 L. Ed. 599; Tarver v. Tarver, 9 Pet. 174, 9 L. Ed. 91; Fouvergne v. City of New Orleans, 18 How. 470, 15 L. Ed. 399; and Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054,—from the supreme court; and In re Aspinwall's Estate (C. C.) 83 Fed. 851; Langdon v. Goddard, 2 Story, 267, 14 Fed. Cas. 1101 (No. 8,060); and Ball v. Tompkins (C. C.) 41 Fed. 486, —are cited in support of the negative answer, but they fail to meet the issue. The case of Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054, does not touch the question. All the other cases from the supreme court, except Tarver v. Tarver, were commenced when the statutes of the states in which they were brought

did not authorize the trial in the respective state courts of general jurisdiction of the questions whether the wills there in controversy were fraudulently procured or invalid at the times when the suits in the federal courts were commenced. Moreover, these are the earlier cases in the supreme court, and, so far as the opinions rendered in them contain expressions at variance with the later decisions in Gaines v. Fuentes, Ellis v. Davis, and Byers v. McAuley, they must be deemed to be overruled.

In the case of In re Broderick's Will it was expressly admitted that, if a state by statute authorized the bringing of a suit to declare a will void in its courts of appeal or equity after its probate, such a suit could be maintained, in a proper case, in a federal court. 21 Wall. 503, 520, 22 L. Ed. 599; Gaines v. Fuentes, 92 U. S. 21, 23 L. Ed. 524.

In the case In re Aspinwall's Estate (C. C.) 83 Fed. 851, the proceeding to be removed was an appeal from the register of wills to the orphans' court. The orphans' court was a special statutory court having probate jurisdiction, but without general jurisdiction to try suits at common law and in equity. The holding was that the proceeding before the orphans' court was not removable, and it was expressly declared in the opinion in that case that the decision there rendered was not at variance with the decisions in Gaines v. Fuentes and Ellis v. Davis that where, under the state practice, a suit could be brought in the court of general jurisdiction to annul a will and its probate after it was established, a like suit might be maintained in the federal court.

In Gaines v. Fuentes the suit was commenced by petition in the parish court of New Orleans to annul a will probated years before, and to recall the decree by which it was established. That is the exact purpose of the appeal in the case in hand. Under the Code of Louisiana there was no suit in equity, and the supreme court divided upon the question whether or not the proceeding in that case fell within the term a "suit of a civil nature at law or in equity." The majority held that it did, that it was a suit in equity, and that the federal court had jurisdiction. The minority held that it was neither an action at law nor a suit in equity, and that the federal court was without jurisdiction. Mr. Justice Field, who delivered the opinion of the majority, said of that proceeding, what is equally true of the suit instituted in the state court by appeal in this case:

"The suit in the parish court is not a suit to establish a will, but to annul it as a muniment of title, and to limit the operation of the decree admitting it to probate. It is, in all essential particulars, a suit for equitable relief, to cancel an instrument alleged to be void, and to restrain the enforcement of a decree alleged to have been obtained upon false and insufficient testimony." 92 U. S. 20, 23 L. Ed. 528.

He further said:

"Whenever a controversy in a suit between such parties arises respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between parties." 92 U. S. 22, 23 L. Ed. 529.

The dissenting opinion of Mr. Justice Bradley follows the line of argument adopted by the circuit court of appeals in the First circuit in Re Cilley (C. C.) 58 Fed. 977, and by the trial judges who have agreed with the opinion in that case that a suit to annul a will and avoid a decree allowing it is a proceeding to probate it, that a proceeding to probate a will is not a suit at common law or in equity, and that, therefore, a federal court has no jurisdiction of it. This contention met the reprobation of the majority of the supreme court in Gaines v. Fuentes, and it finds no support in the subsequent decisions of that court. In Ellis v. Davis, 109 U. S. 487, 3 Sup. Ct. 327, 27 L. Ed. 1006, that court held: (1) That, where the courts of general jurisdiction of a state are authorized to try the validity of a will in a suit involving the title to real property, the federal court has like jurisdiction in cases in which the necessary amount in controversy and the diverse citizenship exist (page 496, 109 U. S., page 333, 3 Sup. Ct., and page 1009, 27 L. Ed.); (2) that, conceding that the judicial power of the federal courts embraces only such suits as arise "in law and equity," this does not necessarily exclude those which may involve the exercise of jurisdiction in reference to the proof of wills (page 497, 109 U. S., page 334, 3 Sup. Ct., and page 1010, 27 L. Ed.); and (3) that the terms "law" and "equity" do not restrict the jurisdiction of the federal courts to the rights and remedies which were employed and recognized in courts of law and equity when the national judicial system was adopted, but that they also embrace all rights and remedies newly created by the statutes of the states which may be administered according to the nature of the case in the courts of the United States (Id.).

In Byers v. McAuley, 149 U. S. 608, 610, 620, 621, 13 Sup. Ct. 906, 37 L. Ed. 867, a distributee of an estate, who was a citizen of another state, brought a bill in the federal court in Pennsylvania to avoid a will which had been probated there, and to recover his share of the property of the estate while it was yet in process of administration in the orphans' court; and obtained a decree that the writing which had been allowed as a will in that court was not a will, but was a mere declaration of trust, and that he was entitled to a certain share of the estate; and the supreme court sustained the jurisdiction and the decree so far as it determined the rights of citizens of different states.

In Brodhead v. Shoemaker (C. C.) 44 Fed. 518, 522, 11 L. R. A. 567, the contest of a will was first heard on pleadings in the court of ordinary, then appealed to the superior court of Floyd county, Ga.. where it was tried according to the practice at common law under the statutes of that state. Thereupon it was removed to the federal court, and Judges Pardee and Newman held that it was an action at law, and removable under the act of 1887-88.

In Richardson v. Green, 9 C. C. A. 565, 61 Fed. 423, 429, 435, an original suit was brought in the federal court in Oregon to avoid a will and the decree of the probate court allowing it on the ground that it was forged. There was a statute of the state of Oregon which permitted the maintenance of such a suit in its state courts of gen-

eral jurisdiction. The circuit court of appeals of the Ninth circuit held that it was a suit in equity, and that the federal court had jurisdiction. Judge McKenna, now Mr. Justice McKenna of the supreme court, said:

"The nature of this suit is not precisely defined, but it is certainly inter partes, and seems to be within the doctrine declared in Ellis v. Davis, 109 U. S. 496, 497, 3 Sup. Ct. 327, 27 L. Ed. 1006. This remedy existing in the Oregon courts, it may be exercised by the United States court."

In Everhart v. Everhart (C. C.) 34 Fed. 82, 85, in a similar case, Judge Hill rendered a like decision.

In this state of the law the court below was right in maintaining the removal of this case, and for the following reasons: (1) Because upon the death of Molen, Mary E. Franz, a citizen of Ohio, his sole heir, became entitled to his property, which was of greater value than $2,000, and, under the constitution and the acts of congress, had the right to maintain a suit in equity in the federal court against Adele Wahl, a citizen of Arkansas, to recover this property, and to enjoin the use of any fraudulent will to create a cloud upon the title of the real estate included within it, and no state legislation could curtail or destroy the jurisdiction of that court to hear and decide for itself every issue between these citizens which was determinative of their rights to this property. (2) Because the larger portion of the property devised by the will was real estate, and after its probate the federal court sitting in equity had plenary jurisdiction, derived from the court of chancery in England, to entertain a suit in equity to avoid the devise of the real estate for forgery, fraud, or undue influence, and, upon the trial of the issue which it was empowered to frame and submit to a jury, to set aside the will, and render futile the decree of probate. And (3) because the statutes of Arkansas gave to the contestant of a will the right to institute in its courts of general jurisdiction, and there to try de novo, a suit involving the question of the validity of the will after its probate; and under these statutes the federal court had like jurisdiction of all suits involving the requisite amount between citizens of different states.

1. When the owner of property dies, his estate is immediately impressed with a trust for the benefit of his creditors, heirs, and legatees. The court of chancery of England and the courts of equity of the United States have plenary jurisdiction, at the suit of any proper creditor, heir, or legatee, to enforce this trust against any occupants, executors, administrators, or parties into whose control any part of the estate may come. 1 Story, Eq. Jur. § 532, etc.; Attorney General v. Cornthwaite, 2 Cox, Ch. 44; Comstock v. Herron, 6 U. S. App. 626, 627, 5 C. C. A. 266, 55 Fed. 803; Hagan v. Walker, 14 How. 29, 14 L. Ed. 312; Adams, Eq. 257; Green's Adm'x v. Creighton, 23 How. 90, 93, 16 L. Ed. 419; Borer v. Chapman, 119 U. S. 587, 598, 599, 7 Sup. Ct. 342, 30 L. Ed. 532. In suits between citizens of different states to enforce this trust this jurisdiction vests in the federal courts, and, while statutes of the various states may provide for the appointment of administrators, the allowance of claims and the probate of wills as muniments of title and as prima

facie evidence of their validity in their courts, they can make no valid provisions which will deprive the national courts of the right or the duty to determine for themselves, independently of these provisions, every issue which involves the rights of citizens of different states to the property of the decedent, when these rights are drawn in question in proper suits brought in apt time.

In Green's Adm'x v. Creighton, 23 How. 90, 93, 16 L. Ed. 419,— a suit against a legatee by a creditor whose claim was barred under the statutes of the state by his failure to present it to commissioners,—Mr. Justice Campbell said, in delivering the opinion of the supreme court: "In the court of chancery, executors and administrators are considered as trustees, and that court exercises original jurisdiction over them in favor of creditors, legatees, and heirs in reference to the proper execution of their trust;" and the suit was maintained, notwithstanding the bar of the statutes of the state.

In Borer v. Chapman, 119 U. S. 587, 598, 599, 7 Sup. Ct. 348, 30 L. Ed. 537,—another suit against a legatee by a creditor of New York whose claim was barred by the laws of California, where the estate had been administered, through the failure of the creditor to present his claim within the time fixed by those laws,—Mr. Justice Matthews, delivering the opinion of the supreme court, and speaking of the jurisdiction of the federal courts over suits in equity to administer estates of decedents, said: "As a part of the ancient and original jurisdiction of courts of equity it vested, by the constitution of the United States and the laws of congress in pursuance thereof, in the federal courts, to be administered by the circuit courts in controversies arising between citizens of different states. It is the familiar and well-settled doctrine of this court that this jurisdiction is independent of that conferred by the states upon their own courts, and cannot be affected by any legislation except that of the United States;" and the suit was maintained, and a decree for the complainant sustained over the objection that his claim was barred under the administration statutes of California.

Immediately after the death of Molen, then, this was the situation: Adele Wahl, a citizen of Arkansas, the devisee in the fraudulent will, was in the possession of the property of the decedent and of a fraudulent instrument under which she intended to acquire the title to it. Mary E. Franz, a citizen of Ohio, was the sole heir of the deceased, and had the right to all his property, and that property was held in trust for her by Adele Wahl, who was in possession of it. Under the constitution and the acts of congress she had the right to maintain a suit in equity in the federal court in Arkansas against Adele Wahl to enforce that trust, and to have every claim of the latter under the fraudulent will or otherwise, and every issue involving her right to that property, tried and determined in that court. She also had the right to maintain a suit in equity in that court to restrain Adele Wahl from imposing the threatened cloud of that fraudulent will upon the title to the real estate of which Molen died seised, and to compel a surrender and cancellation of the instrument, and in this suit she had the right

to have the question of the fraudulent character of the will tried in the federal court. Could the legislature of Arkansas destroy these rights? Could the statutes of that state, by providing that this fraudulent will should be presented to, contested, and allowed, with or without notice, in its probate court, or in any of its other courts, and that, if there established, its validity should never be questioned elsewhere, deprive this citizen of Ohio of the right granted to her by the constitution and laws of the United States to try in the federal court the only issue involving her right to her property,—the issue whether or not this will was procured by fraud and undue influence? Could the statutes of Arkansas provide that a fraudulent deed should be presented to the register of deeds, or to any of its courts, and, if there allowed, deprive the citizens of other states of the right to contest its validity in a federal court as against the citizens of Arkansas when its validity was determinative of their rights of property in that state? These questions are susceptible of but one answer. The proposition that no state legislation can destroy or impair the right of citizens of different states to maintain their suits for and to try their issues involving rights of property in the federal courts is fundamental in the jurisprudence of the United States, and it is nowhere affirmed more decisively or illustrated more copiously than in the suits in the federal courts by creditors and distributees for their shares of the estates of decedents. The statutes of the various states commonly provide that claims against the estates of decedents shall be presented to their probate courts, or surrogate courts, or orphans' courts, or to commissioners within a certain time after a published notice, and that, if disallowed by them, or if not presented within the time fixed, they shall be barred; that wills shall be presented for probate, and that all persons who fail to contest them in these courts shall be estopped to question their validity; that administrators' and executors' accounts shall be allowed by these courts, and that their allowances shall be conclusive upon all the world. But creditors, heirs, and legatees who are citizens of other states are not deprived of their right to maintain and try their suits in the federal courts against administrators, executors, and all other parties who are citizens of the state of the decedent, to determine their rights in the property of the estate; nor are they barred of their original rights to maintain and to try these suits in the federal courts by their failure to present their claims to the state courts, as provided by the administration statutes of the states. Suydam v. Broadnax, 14 Pet. 67, 74, 10 L. Ed. 357; Bank v. Vaiden, 18 How. 503, 507, 15 L. Ed. 472; Borer v. Chapman, 119 U. S. 587, 588, 589, 7 Sup. Ct. 342, 30 L. Ed. 532; Lawrence v. Nelson, 143 U. S. 215, 224, 12 Sup. Ct. 440, 36 L. Ed. 130; Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260; Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, 28 L. Ed. 547; Hayes v. Pratt, 147 U. S. 557, 570, 13 Sup. Ct. 503, 37 L. Ed. 279; Byers v. McAuley, 149 U. S. 608, 621, 13 Sup. Ct. 906, 37 L. Ed. 867; Hyde v. Stone, 20 How. 170, 175, 15 L. Ed. 874; Hess. v. Reynolds, 113 U. S. 73, 76, 5 Sup. Ct. 377, 28 L. Ed. 927.

In Bank v. Vaiden a creditor who had failed to present his claim against the estate before the probate court, as provided by the statutes of Alabama, and whose claim was by those statutes barred by such failure, brought a bill in equity against the administrators in the federal court to enforce the trust in his favor, and to compel them to allow and pay his claim, and the supreme court sustained the bill, and said:

"The law of a state limiting the remedies of its citizens in its own courts cannot be applied to prevent the citizens of other states from suing in the courts of the United States in that state for the recovery of any property or money to which they may be legally entitled."

In Lawrence v. Nelson, 143 U. S. 215, 224, 12 Sup. Ct. 443, 36 L. Ed. 134, it was held that a statute of the state of Illinois which required all claims against the estate of a deceased person to be filed in the county court within two years, or be forever barred, did not cut off a claim of a citizen of another state, who failed to present his claim within the time, and afterwards sued the administrator in the federal court, and the supreme court said:

"The general equity jurisdiction of the circuit court of the United States to administer as between citizens of different states the assets of deceased persons within its jurisdiction cannot be defeated or impaired by laws of a state undertaking to give jurisdiction to its own courts."

In Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260, one of the distributees of the estate of a deceased person brought a suit in equity in the federal court against the administrator of the estate in Missouri, who was proceeding to administer the estate in the probate court under the laws of that state. Objection was made that the suit could not be maintained because the statutes of Missouri provided that the probate court should have exclusive jurisdiction over all disputes concerning the duties and accounts of administrators. But the supreme court sustained the bill, determined the rights of the distributees, and declared that no legislation of a state could oust the jurisdiction of the federal court to determine a controversy between citizens of different states.

In Byers v. McAuley, 149 U. S. 608, 610, 620, 621, 13 Sup. Ct. 906, 37 L. Ed. 867, a distributee of an estate which was in process of administration under a pretended will which had been probated as such before the register in Pennsylvania maintained a suit in equity in a federal court to avoid the will, and to have a determination of his rights to a share in the estate, and obtained a decree that the instrument which had been probated as a will was not a will, and that determined his rights in the distribution of the estate.

The rational deduction from the decisions that have been cited and from the principle on which they rest is that immediately upon the death of Joseph Molen the federal court had original jurisdiction of a civil suit in equity by Mary E. Franz against Adele Wahl to enforce the trust impressed upon the estate of the decedent in the latter's hands in favor of the former, and to enjoin the latter from using her fraudulent will to cloud the title of the real property which was the principal part of the estate; that Mary E. Franz had the right to the trial and determination of the crucial question

whether or not the pretended will was fraudulent in that court; that the statutes of Arkansas could not deprive her of any of these rights; that the federal court still has that jurisdiction; and that, since the suit she has instituted by appeal in the circuit court of the state was pending in a court of justice of general jurisdiction, is between these two parties, involves the same property and the same issues, she had the right to its removal.

2. As a part of the original jurisdiction exercised by courts of common law and equity in England to try and decide the question whether or not a devise of real estate was legally made after the will had been probated in the ecclesiastical court, the federal court derived a like jurisdiction to hear and determine that question after the probate of this will in a suit brought for that purpose. It was long a disputed question in England, never finally put at rest until decided by a divided court in Allen v. McPherson, 1 H. L. Cas. 191, in 1847, whether or not the court of chancery had jurisdiction to avoid a will of personal property and the decree allowing it in the ecclesiastical court for forgery, fraud, or undue influence. The jurisdiction was repeatedly invoked and repeatedly maintained. Thynn v. Thynn, 1 Vern. 296; Segrave v. Kirwan, 1 Beat. 157; Marriot v. Marriot, 1 Strange, 166; Barnesley v. Powel, 1 Ves. Sr. 284. But it was finally refused in Allen v. McPherson. Under the English law a devise of real estate rested upon different grounds. Notwithstanding the probate of a will of both personal and real property in the ecclesiastical court, the jurisdiction of the court of chancery and of courts of law to try the issue whether or not the devise of the real estate was procured by fraud or undue influence was always conceded. Barnesley v. Powel, 1 Ves. Sr. 283–285. A like jurisdiction vested in the federal court below, and, as the bulk of the property covered by this will was real estate, it had jurisdiction of an original suit between these parties to set aside this will upon this ground. The statutes of Arkansas could not deprive it of this jurisdiction, and, as the suit removed was before a court of justice, and for the same purpose, it had jurisdiction of this suit.

3. If it is conceded, for the sake of argument merely, that the federal court had no jurisdiction of an original suit to avoid this fraudulent will, and to render futile its probate upon the grounds that have now been considered, it still has jurisdiction of such a suit under the statutes of Arkansas, which gave the right to maintain it in its courts of general jurisdiction. Rights created and remedies provided by the statutes of a state to be pursued in its courts may be enforced and administered in the federal courts, either at law, in equity, or in admiralty, as the nature of the new rights and remedies may require. Darragh v. Manufacturing Co., 78 Fed. 7, 14, 23 C. C. A. 609, 49 U. S. App. 1; Gaines v. Fuentes, 92 U. S. 10, 20, 23 L. Ed. 524; Richardson v. Green, 9 C. C. A. 565, 61 Fed. 423, 429, 435; Brodhead v. Shoemaker (C. C.) 44 Fed. 518, 11 L. R. A. 567; In re Stutsman Co. (C. C.) 88 Fed. 337, 341; Ellis v. Davis, 109 U. S. 485, 497, 3 Sup. Ct. 327, 27 L. Ed. 1006; Railway Co. v. Whitton's Adm'r, 13 Wall. 278, 287, 20 L. Ed. 571; Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439; Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed.

903; Trust Co. v. Krumseig, 23 C. C. A. 1, 77 Fed. 32; Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624; In re Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, 28 L. Ed. 52; Frost v. Spilley, 121 U. S. 552, 557, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213, 28 L. Ed. 733; Chapman v. Brewer, 114 U. S. 158, 170, 171, 5 Sup. Ct. 799, 29 L. Ed. 83; Gormley v. Clark, 134 U. S. 338, 348, 349, 10 Sup. Ct. 554, 33 L. Ed. 909; Bardon v. Improvement Co., 157 U. S. 327, 330, 15 Sup. Ct. 650, 39 L. Ed. 719; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Fleitas v. Richardson, 147 U. S. 538, 13 Sup. Ct. 429, 37 L. Ed. 272; Lincoln Co. v. Luning, 133 U. S. 529, 531, 10 Sup. Ct. 363, 33 L. Ed. 766.

In Darragh v. Manufacturing Co., 23 C. C. A. 609, 78 Fed. 7, 14, the state of Arkansas had enacted a statute which gave to a simple contract creditor of an insolvent corporation a suit in equity in its chancery court to wind up the affairs of such corporation, and to distribute its assets without the recovery of a judgment or the return' of an execution. No such suit could have been maintained in the federal court without this statute. But this court held that, inasmuch as that state had created this new right and remedy, and had provided for their enforcement in its court of chancery, an original suit in equity could be maintained in the federal court for the same purpose.

In Ex parte McNiel, 13 Wall. 236, 243, 20 L. Ed. 626, a statute of New York had created a right to pilotage in certain cases. This right did not exist without the statute. A libel in admiralty was filed in the United States district court to enforce this right, and a decree for the libelant was rendered. An application was made to the supreme court for a writ of prohibition against the enforcement of the judgment because the court below had no jurisdiction. The supreme court denied the writ, and said: "This principle may be laid down as axiomatic in our national jurisprudence: A party forfeits nothing by going into a federal tribunal."

In Railway Co. v. Whitton's Adm'r, 13 Wall. 270, 286, 20 L. Ed. 571, and Dennick v. Railway Co., 103 U. S. 11, 18, 26 L. Ed. 439, it was held that state statutes creating causes of action for negligent killing, and providing for actions at law to enforce them in state courts, enabled the federal courts to take jurisdiction of such actions, and to enforce the rights created by the state statutes, although no such actions could have been maintained in the absence of those statutes.

In Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 904, the statutes of a state had given to property holders the right to enjoin the payment of an illegal tax, and in discussing the right of the complainant to maintain a suit in a national court for the same purpose the supreme court declared the holding of that court to be that, "where a statute of a state created a new right, or provided a new remedy, the federal courts will enforce that right either on the common-law or equity side of its docket, as the nature of the new right or the new remedy requires."

These decisions, and those cited with them which we have not reviewed, conclusively establish the proposition that the meaning of the term "suits of a civil nature at common law or in equity," which was re-enacted by congress in 1887–1888, is not to be discovered by a consideration alone of what actions at law or suits in equity might have been maintained when the national system of jurisprudence was established in 1789. They demonstrate the fact that it is not to be restricted to those suits at law and in equity which might then have been maintained, but that it includes every action at law, and every suit in equity which had been authorized to enforce rights created under state laws between 1789 and 1887. The broad interpretation and liberal construction which had been given to this term by the decisions of the supreme court to which reference has been made was by a familiar canon of construction adopted and confirmed by congress when it re-enacted the same words without change in the act of 1887–1888. When, therefore, the statutes of Arkansas gave this defendant in error the right to institute and maintain a suit in its courts of general jurisdiction to try the validity of this will, and to avoid it and its probate on account of fraud, undue influence, or illegality, the jurisdiction of the federal court in that state was thereby extended over that suit between citizens of different states.

It will not do to say that the proceeding here in hand was sui generis, and not a suit. Chief Justice Marshall conclusively answered that suggestion in Weston v. City Council, 2 Pet. 449, 464, 7 L. Ed. 486. He said:

"The term [suit] is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him. The modes of proceeding may be various, but, if a right is litigated between the parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

When this case was pending in the circuit court of the state, the defendant in error was pursuing the remedy in that court of justice which the law afforded her. A right was being litigated in a court of justice between two, and only two, opposing parties, and the case was, therefore, a suit and a suit of a civil nature.

To the suggestion that it is neither a suit at common law nor in equity, the answer is that it is both. It is a suit of which a court of law and a court of equity have concurrent jurisdiction. The statute which authorizes it declares that the issues it involves may be joined and tried de novo according to the course and practice of the common law, and that the judgment it prescribes may be rendered by a court of law. It is accordingly an action at law. The same statute provides that the same issues may be framed and tried in an original suit in the court of chancery in case the complainant is a nonresident, and has not appeared, or been served with process, in the circuit court. Moreover, this suit has the essential attributes of a suit in equity. The enforcement of trusts, the undoing of frauds, the removal of void instruments, and the record of them from the title to real estate which they cloud are well-known heads

of equity jurisprudence. This is a suit to enforce the trust impressed upon the estate of Molen at his death. It is a suit to undo the fraud perpetrated by the procurement of his will by undue influence. It is a suit to remove the cloud which has been imposed upon the title to the real estate of which he died seised by a void and fraudulent will. It has every essential attribute of, and it is, a suit in equity. Hayden v. Thompson, 71 Fed. 60, 62-64, 17 C. C. A. 592, 594, 595, 36 U. S. App. 361, 367, 368; Gaines v. Fuentes, 92 U. S. 21, 23 L. Ed. 524.

Nor is the argument persuasive that this was not a suit at common law or in equity, and that the jurisdiction of the federal court over it was withheld or restricted by the fact that under the Arkansas statute it was to be instituted in the state court of general jurisdiction by appeal, and not by the issue and service of original process. This contention sticks in the bark, and sacrifices substance to form, verity to technicality. This suit in the state circuit court would have been the same that it now is, in substance and in legal effect, if the statute of Arkansas had authorized its commencement in that court, and it had been brought there by original process after the establishment of the pretended will in the probate court. The nature and character of a suit or proceeding are to be determined by its essential attributes, not by the forms or means of its institution. These attributes are the court in which it is pending, the parties, the issues, the object of the suit, and the relief that may be rendered. The court in which the suit would have been pending, the parties to it, the purpose of the suit, the issues in it, and the relief that could have been granted, every essential attribute of it, would have been the same if it had been commenced in the circuit court of the state by original process that they now are, although it was instituted by appeal. The original jurisdiction of the federal court over it could not be restricted, withheld, or determined by the mere mode by which it was commenced. Where a statute of a state authorizes a suit of a civil nature at common law or in equity of a nature of which a federal court may take jurisdiction to be instituted in its courts of general jurisdiction by appeal, certiorari, notice, or other proceeding, the jurisdiction of the federal court attaches; and a like suit between citizens of different states may be instituted in that court by original process, and maintained there. Boom Co. v. Patterson, 98 U. S. 403, 406, 407, 25 L. Ed. 206; Upshur Co. v. Rich, 135 U. S. 467, 474, 475, 10 Sup. Ct. 651, 34 L. Ed. 196; Chicot Co. v. Sherwood, 148 U. S. 529, 533, 13 Sup. Ct. 695, 37 L. Ed. 546; Hess v. Reynolds, 113 U. S. 73, 76, 5 Sup. Ct. 377, 28 L. Ed. 927; Brodhead v. Shoemaker (C. C.) 44 Fed. 518, 522, 11 L. R. A. 567; In re Stutsman Co. (C. C.) 88 Fed. 337, 340; In re Foley (C. C.) 76 Fed. 390.

In Boom Co. v. Patterson, 98 U. S. 403, 407, 25 L. Ed. 206, the statutes of Minnesota provided for the exercise of the power of eminent domain by a proceeding in which the boom company filed a petition in the state court for the appointment of commissioners to assess the value of the land taken, upon evidence produced before them, and that the landowner might appeal from the award of

the commissioners to the state court of general jurisdiction, and there have a trial de novo of the issue relative to the value of his land. The supreme court held that:

"The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of that term. But, when it was transferred to the district court by appeal from the award of the commissioners, it took under the statute of the state the form of a suit at law, and was thenceforth subject to the ordinary rules incident to it." (Page 406, 98 U. S., and page 208, 25 L. Ed.)

It answered the argument that the federal court had no jurisdiction of the suit because it was instituted in the state district court by an appeal from the commissioners and not by original process in these apt and decisive words:

"The case would have been in no essential particulars different had the state authorized the company by statute to appropriate the particular property in question and the owners to bring a suit against the company in the courts of the state." (Page 407, 98 U. S., and page 208, 25 L. Ed.)

This remark is equally true of the suit at bar. That there is no misconception here of the scope and effect of the holding of the supreme court in Boom Co. v. Patterson will appear from an attentive reading of its later decisions in Hess v. Reynolds, 113 U. S. 73, 76, 5 Sup. Ct. 377, 28 L. Ed. 927; Upshur Co. v. Rich, 135 U. S., at pages 474–476, 10 Sup. Ct. 653, 34 L. Ed. 199, where the decision in Boom Co. v. Patterson is reviewed and affirmed; and Chicot Co. v. Sherwood, 148 U. S. 529, 533, 13 Sup. Ct. 695, 37 L. Ed. 546. In the last case a statute of Arkansas provided that all claims against counties in that state should be presented to the county court of the county for allowance or rejection; that any claimant might appeal from the judgment of the county court to the state circuit court, and there have a trial de novo; but that suits against the county could be commenced and maintained in no other way. The supreme court expressly held that the right to maintain the revisory trial in the state court of general jurisdiction was sufficient in itself to warrant the maintenance of a like suit by original process in the federal court. These authorities, and those cited with them which have not been reviewed, are decisive of the proposition that under the statute of Arkansas, which allows the institution of this suit by appeal, the federal court has jurisdiction of a suit brought by original process in that court for like relief; and, since it has jurisdiction of such an original suit, it has jurisdiction of this suit by its removal from the state court.

The deductions which should be drawn from the authorities in this country on the subjects which have been under consideration are these: The federal courts, as a part of their original jurisdiction, derived from the court of chancery in England, have jurisdiction as between citizens of different states to determine their rights to the property of deceased persons in process of administration, to avoid fraudulent deeds, wills, and other instruments which threaten to cloud the title to the real estate of such estates, and to deprive the owners of their property. No state legislation can destroy or impair this juris-

diction, or deprive citizens of different states of their right to try in the federal courts, in a proper suit, brought in apt time, every issue involving their right to a charge upon or a share in the property of the deceased person, whether that issue involves the validity of a deed, a mortgage, or a will. Federal courts have no jurisdiction of a proceeding to prove a will, or to appoint administrators of estates, or to allow claims against estates as such, in the absence of a suit at law or in equity in a court of justice between citizens of different states involving their rights of property. The statutes of the various states may lawfully provide for the proof of wills, the allowance of claims, and the appointment of administrators, and under these statutes wills may be established as muniments of title, and may become prima facie evidence of their validity, claims may be allowed and rejected, and administration of estates may proceed; but no state legislation regarding the administration of estates, and no administration under such legislation, can deprive the citizens of different states of their right to a trial de novo, and an independent decision by a federal court of every issue which involves their right to a claim upon or interest in the property of the estates administered in a proper suit involving the requisite amount, and instituted in apt time, whether the issue it presents involves the validity of a will, of a debt, or of a claim of heirship. Where the statutes of a state create the right to institute in its courts of general jurisdiction, either by appeal or by original process, and to maintain and try according to the course and practice of the common law or according to the practice in equity, a suit between opposing parties to avoid a will and the probate thereof for fraud, undue influence, or illegality in its making, the federal court in that state has original jurisdiction of a like suit between citizens of different states involving the necessary amount. A suit which involves more than $2,000, instituted pursuant to a state statute by a citizen of Ohio against a citizen of Arkansas, in a court of general jurisdiction of a state, by appeal from a decree of a probate court allowing a will, for the purpose of avoiding the will and its probate for fraud and undue influence in procuring it, is a suit of which the federal court could have taken original jurisdiction by original process, either as a suit at law or in equity, and is, therefore, removable to the federal court under the act of 1887–88. Since the case was removable, and as there was no substantial error in its trial, the judgment below ought to be affirmed.